[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision,* Slip Opinion No. 2016-Ohio-7466.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-7466

COLUMBUS CITY SCHOOLS BOARD OF EDUCATION, APPELLANT, *v.* FRANKLIN COUNTY BOARD OF REVISION ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision,* Slip Opinion No. 2016-Ohio-7466.]

*Taxation—Real-property valuation—Tax tribunals, as finders of fact, have wide discretion to weigh the probative force of expert opinions—Decision affirmed.*

(No. 2014-0885—Submitted April 5, 2016—Decided October 27, 2016.)

APPEAL from the Board of Tax Appeals, No. 2011-3590.

————————————

**Per Curiam.**

{¶ 1} This real-property-valuation case concerns the proper valuation for tax year 2005 of a 240-unit apartment complex in northeast Franklin County. Appellee Albany Commons, Ltd., the property owner, sought a reduction from the original valuation of $13,600,000 to $9,720,000. Ultimately, appellee the

Franklin County Board of Revision ("BOR") in a two-to-one vote adopted the appraisal valuation of $9,338,000 proposed by James Horner, a certified appraiser and Member of the Appraisal Institute ("MAI"). The Board of Tax Appeals ("BTA") affirmed.

{¶ 2} Appellant, the Columbus City Schools Board of Education ("BOE"), has appealed, claiming that the absence of market data and other flaws in the appraisal made it unreasonable and unlawful for the BOR and the BTA to accept Horner's opinion of value. Because the tax tribunals are the finders of fact, possessing wide discretion to weigh the probative force of expert opinions, we reject the BOE's contentions and affirm the decision of the BTA.

**Factual Background**

{¶ 3} The Albany Commons apartment complex was constructed and rented out in a two-phase project, with the first phase completed in 2002 and the second phase in late 2003 or early 2004. It has a small clubhouse with a swimming pool and a small exercise facility. Seventy-nine units have attached garages, and 58 units have detached garages. Seventy percent of the units have two bedrooms and 30 percent have one bedroom. The complex has a gated entrance. The property is owned by Albany Commons, Ltd., and managed by Oakwood Management Company.

{¶ 4} These proceedings stem from a complaint filed by Albany Commons for tax year 2005 (a reappraisal year in Franklin County) seeking a reduction from the auditor's valuation of $13,600,000 to $9,720,000. The BOR initially held a hearing on March 23, 2009, and voted on April 3, 2009, to retain the auditor's valuation for tax year 2005.[1] The BOR mailed the statutory decision letter on

---

[1] The hearing encompassed both the 2005-tax-year complaint and the 2008-tax-year complaint. For tax year 2008, a reduction to $12,900,000 was ordered. Like the tax-year-2005 determination, the tax-year-2008 determination was also vacated and the case reopened, but the BOE did not appeal the redetermined value to the BTA; only the tax-year-2005 case was appealed to the BTA, and only tax year 2005 is at issue before us in this appeal.

April 29, 2009. The BOR later vacated its 2005 determination on May 27, 2009; notice of the vacation was mailed on May 28.[2]

{¶ 5} In 2011, the BOR convened a hearing on the owner's complaints for 2005 and 2008, at which Albany Commons presented an appraisal by James Horner, MAI, that was based primarily on the income approach but also cited sale comparables and appraised the property at $9,338,000 on January 1, 2005, and $11,400,000 on January 1, 2008.

{¶ 6} Horner's appraisal stated that the cost approach was not relevant because

> this type of property would be purchased almost exclusively based upon the quality and quantity of the income stream. There is no evidence to suggest that a potential buyer of the property would consider the cost-new, less the estimate of physical depreciation and functional or economic obsolescence plus the value of the land as being meaningful in the decision making regarding "price."

Instead, Horner relied on a combination of income and sales-comparison approaches, with emphasis on the former.

{¶ 7} Horner adduced ten sales of apartment complexes from 2003 to 2010. He provided a chart that gave the following information for each sale: the sale date, the sale price, the "going-in" capitalization rate, and the sale price per unit. The capitalization rates ranged from 7.5 percent to 9.5 percent. The price-per-unit figures ranged from $35,833 to $87,500.

---

[2] The April decision was validly vacated because the vote to vacate was taken by the BOR within 30 days of the mailing of the decision. *See Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 121 Ohio St.3d 218, 2009-Ohio-760, 903 N.E.2d 299, ¶ 14, 27. Accordingly, the BOR had jurisdiction to conduct further proceedings and issue the decision that was appealed to the BTA in this case.

**{¶ 8}** The appraisal report states that "[a] per unit comparison is a 'weak' barometer for estimating value because of the numerous differences from the standpoint of location and physical characteristics." Nonetheless, Horner did derive a sales-comparison estimate of value by positing a price per unit for the subject property of $40,000 for tax year 2005, leading to an estimated value of $9,600,000 for the 240-unit complex. But the report qualifies the estimate by stating that "this per unit analysis is used only as further support for the value as reported within the subsequent [income approach] section."

**{¶ 9}** Notably, Horner performed no adjustments in reaching his estimate of value by the sales-comparison method. When cross-examined about this at the BOR hearing, he stated that "these type[s] of properties are not sold on any kind of a per-unit basis. They are sold exclusively based upon the quality and quantity of the income." He noted that the properties listed were in various locations and had "seven different kinds of apartments, with different sizes, some with garages, some without, some with an amenity package, some [without]," and that the "myriad of differences" meant that no potential buyer or seller would "sit down with a computer and go and start making adjustments for these things. And it's just an exercise in futility to even attempt to do that."

**{¶ 10}** The main use Horner made of the sale comparables was to abstract from them a capitalization rate that could be applied in the income approach. Horner expressed his view that the comparable sales furnished a sound basis for that use despite the range in time of the sales. Noting that "[t]he subject is inferior in overall quality, amenities and location" in comparison to most of the sold properties, Horner "estimated the overall rate for the subject to be at 8.5%," which he said was also supported by the band-of-investment analysis, which is set forth in the appraisal.

**{¶ 11}** Under the income approach, Horner used actual revenues and expenses of the property over several years. In the written appraisal, Horner

referred to a "file memorandum" that contained "various rent comparables which support the current and previous rent levels for the subject." At the BOR hearing, Horner testified that he had looked at "old appraisals" that he had done "in that same marketing area" and that the rents and expenses for those properties supported the rent and expense figures for the subject property.

{¶ 12} On cross-examination, Horner did adduce a figure of $.80 per square foot as a market-rent figure. He also stated that the average square footage of the one- and two-bedroom apartments at issue was 972 square feet. Later, he stated that he had found that the income and expenses of the subject property closely tracked the market, and so he used the subject property's figures.

{¶ 13} Horner said that he had reviewed the expenses in other appraisal projects that he had worked on but had not included that data in the report because it was "proprietary," so he was "not at liberty" to supply that information in the present appraisal report. However, Horner also stated that "the most accurate and meaningful barometer for estimating net income is the actual income performance for the past 7 years."

{¶ 14} To derive revenue and expense figures for 2005, Horner averaged the 2004 and 2005 information. He indicated that he believed that blending the information would give a more accurate indication of value, since the second phase of the property was newly built in 2004, so 2004 was the "lease-up period" for the apartments in that phase. The net-operating-income figure he arrived at was $1,015,995. Horner developed a tax additur of 2.38 percent, which he added to the previously estimated rate of 8.5 percent to derive a capitalization rate of 10.88 percent. Dividing the income figure by the capitalization rate resulted, after rounding, in a property valuation of $9,338,000 for 2005.

{¶ 15} On September 15, 2011, the BOR convened to decide the case. Horner's valuation was adopted despite objection from the treasurer's delegate.

**{¶ 16}** The BOE appealed to the BTA. At that level, two hearings were held, one addressing a motion for sanctions for failure to comply with discovery, and a second addressing the value of personal property. The owner's witness testified that the value of personal property as of 2005 was $150,000. On that basis, the owner asked for a reduction of value to $9,188,000.[3]

**{¶ 17}** The BTA issued its decision on May 1, 2014. It tersely adopted the Horner appraisal valuation without adjustment and without discussion of other issues raised by the BOE. The BOE has appealed, and the adoption of the appraisal valuation is the sole issue on appeal.

**Deference Is Owed to the Determination of the Tax Tribunals**

**{¶ 18}** In this case, an MAI appraiser presented an appraisal report that was reviewed and adopted by both the BOR and the BTA. On appeal, the BOE advances a single proposition of law: "An appraisal that fails to include relevant market data and the specific adjustments made thereto is inherently unreliable and cannot be used to determine the true value of real property for tax purposes." Under this proposition of law, the BOE advanced three reasons why the BTA erred in relying on Horner's appraisal:

1.      Horner's income approach did not comply with law because it did not contain sufficient data to allow any reasonable decision to be made as to the true value of the property.

2.      Horner's market approach did not comply with law because it did not contain sufficient data to allow any reasonable decision to be made as to the true value of the property.

---

[3] The BOE's counsel also suggests that an improper change of value for 2005 had been made by the auditor from $13,600,000 to $12,900,000. The BOR hearing notes do indicate that the auditor's valuation went from $13,600,000 at the time the complaint was filed for tax year 2005 to $12,900,000 by the time of the 2009 and 2011 hearings for the 2005 year. Because we affirm the BTA's reliance on Horner's appraisal, we need not address this point.

> 3. Horner's refusal to perform a cost approach violated Ohio laws governing the determination of the true value of the property.

{¶ 19} Elemental to the tax appeals that come before this court is the well-articulated and often repeated proposition that "[i]n reviewing the BTA's disposition of the factual issues in a property valuation case, '[t]his court does not sit either as a super BTA or as a trier of fact de novo.' " *Strongsville Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 112 Ohio St.3d 309, 2007-Ohio-6, 859 N.E.2d 540, ¶ 22, quoting *DAK, PLL v. Franklin Cty. Bd. of Revision*, 105 Ohio St.3d 84, 2005-Ohio-573, 822 N.E.2d 790, ¶ 14. "The fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities, and this court will not disturb a decision of the Board of Tax Appeals with respect to such valuation unless it affirmatively appears from the record that such decision is unreasonable or unlawful." *Cardinal Fed. S. & L. Assn. v. Cuyahoga Cty. Bd. of Revision*, 44 Ohio St.2d 13, 336 N.E.2d 433 (1975), paragraph four of the syllabus.

{¶ 20} Thus, in this case, the BOE must affirmatively demonstrate that the BTA's and the BOR's weighing of the evidence or determination of its probative force was unreasonable or unlawful. The daunting nature of that challenge lies in the deferential standards that we apply to the type of argument the BOE is advancing here. Quite simply, our case law establishes that "[t]he weighing of evidence and the assessment of its credibility" are "the statutory job of the BTA," which is "vested with wide discretion in determining the weight to be given to the evidence and the credibility of the witnesses that come before it." *EOP-BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 1, 2005-Ohio-3096, 829 N.E.2d 686, ¶ 9, citing *Fawn Lake Apts. v. Cuyahoga Cty. Bd. of Revision*, 75 Ohio St.3d 601, 603, 665 N.E.2d 194 (1996), and *Cardinal Fed. S. &*

*L.* at paragraph three of the syllabus. As a result, the burden on the BOE is to demonstrate an abuse of discretion on the part of the BOR and the BTA. *EOP-BP Tower*, ¶ 14, citing *Witt Co. v. Hamilton Cty. Bd. of Revision*, 61 Ohio St.3d 155, 157, 573 N.E.2d 661 (1991).

{¶ 21} Our review of the BOE's objections and the record leads us to conclude that neither legal error nor abuse of discretion has been demonstrated. To be sure, the BOE points to matters that definitely relate to the probative force of the Horner appraisal. But none of the points establish unlawfulness or an arbitrary or unconscionable attitude on the part of the BTA in adopting the appraisal. *See J.M. Smucker, L.L.C. v. Levin*, 113 Ohio St.3d 337, 2007-Ohio-2073, 865 N.E.2d 866, ¶ 16 (abuse of discretion connotes an unreasonable, arbitrary, or unconscionable attitude).

{¶ 22} One point advanced by the BOE is the appraisal report's reliance on revenue and expenses of the subject property rather than market data. Although Ohio law permits the assessor to consider both contract rent (the rent actually charged tenants of the property at issue) and economic rent (the rent generally charged for similar premises in the marketplace), the emphasis is usually to be placed on economic rent. Ohio Adm.Code 5703-25-07(D)(2) ("While the contract rental or lease of a given property is to be considered the current economic rent should be given weight"); *accord Wynwood Apts., Inc. v. Cuyahoga Cty. Bd. of Revision*, 59 Ohio St.2d 34, 391 N.E.2d 346 (1979). The fact that emphasis is to be placed on economic rent reflects the general principles of property valuation. *See* International Association of Assessing Officers, *Property Assessment Valuation* 204 (2d Ed.1996) (starting point of the income approach involves estimating the "annual economic rent for the property at 100 percent occupancy," where "economic rent" means "the annual rent that is justified for the property *on the basis of a careful study of comparable properties in the area*" [emphasis added]).

**{¶ 23}** Here, the appraisal report contains data solely from the actual rent and expenses of the subject property. But although the appraisal lists only the subject property's own revenue and expenses, Horner testified that he had reviewed the market data for the relevant time period and determined that the subject property's actual numbers were in line with the market data. Thus, to the extent that the BOR and the BTA credited that testimony, the actual revenues and expenses could be understood to reflect the market.

**{¶ 24}** The gravamen of the BOE's argument, however, lies in the absence of the market data from the written appraisal report. Because the market data was not included in the appraisal, the BOE argues, the appraisal was defective and unreliable as a whole and the BTA could not rely on it.

**{¶ 25}** The BOE focuses on two points in relation to this argument. First, the lack of market data in the appraisal report meant that under the Uniform Standards for Professional Appraisal Practice ("USPAP") the appraisal was required to be labeled a "restricted-use appraisal," making it improper for the BOR and BTA to rely on it in determining the value of the property. Second, the failure to require that market data be included in an appraisal is unfair because it prevents opposing litigants from questioning the input and the results and also deprives the BOR and the BTA of the very information necessary to determine whether credence should be accorded to the proffered opinion of value.

**{¶ 26}** As to the first point, we have already rejected the assertion that the USPAP imposes legally binding limitations on the evidence that may be considered by the tax tribunals when valuing real property for tax purposes. *See Lowe's Home Ctrs., Inc. v. Washington Cty. Bd. of Revision*, 145 Ohio St.3d 375, 2016-Ohio-372, 49 N.E.3d 1266, ¶ 27 ("The bare fact of such violations [of USPAP] does not by itself make it unlawful to adopt a particular appraisal," though such violations "could be found to affect the credibility of the appraisal under all the circumstances of the case"). We reiterate the point here. The BOE

argues, based on USPAP Standards Rules attached as an appendix to its brief, that because the appraisal report does not contain the market data on which Horner said that he relied, the appraisal cannot be relied on by a third party, such as the BTA here. Assuming that the argument is correct, we nonetheless conclude that it was not unlawful for the BTA to rely upon the appraisal in conjunction with Horner's testimony to the BOR because no specific statute or regulation requires the BTA to reject the appraisal on such grounds.

{¶ 27} Quite simply, the BOE has cited no provision of Ohio law that bars the BTA from relying on appraisal evidence by reason of a failure to comply with professional appraisal standards. In so stating, we acknowledge that the appraiser is required by R.C. 4763.12 and 4763.13 to abide by such standards. We also recognize that the BOE has cited an Ohio Department of Transportation operating manual for the proposition that ODOT bars the use of restricted-use appraisals in the context of valuing property in conjunction with acquiring real property for transportation projects. But the existence of a restriction in another administrative context does not by itself constrain the BTA when determining property value for tax purposes.

{¶ 28} Nor do we find the BTA's reliance on an appraisal that omits market data to be unreasonable from a fairness standpoint. The BOE had every opportunity to present evidence of its own to impugn the Horner appraisal but failed to do so.

{¶ 29} When all is said and done, the evaluation of the probative character of the evidence and the credibility of the witness is the quintessential discretionary authority of the finder of fact. While it certainly would have been desirable to include the market data in the report, the degree to which that omission affects the probative character of the opinion of value is a decision for the BOR and the BTA rather than for this court. Horner gave his reasons for leaving data out of the appraisal report along with his reasons for using that data

in forming his opinion of value, and the BOE has not established the unreasonableness or unlawfulness by showing an abuse of discretion in the BTA's decision to credit Horner's testimony and report.

{¶ 30} Another objection raised by the BOE is Horner's decision to average the 2004 and 2005 revenues in determining the tax-year-2005 valuation. Because the property would have completed its lease-up period by 2005, the "stabilized" rents should have been used, according to the BOE. Here again, Horner gave his reasons in his BOR testimony, and the BOE has not established an abuse of discretion in the BTA's finding them to be valid.

{¶ 31} In conjunction with this argument, the BOE relies on *NFI Metro Ctr. II Assoc. v. Franklin Cty. Bd. of Revision*, 78 Ohio St.3d 105, 676 N.E.2d 881 (1997), but out decision in that case does not negate the validity of Horner's appraisal here. The BOE quotes a passage from our *NFI* decision that itself quotes the BTA's decision; that passage states that reliance on current rents led to an understatement of property's value because evidence showed that rents were increasing. But the quoted passage is not the holding of this court, and the BOE ignores the remainder of our *NFI* decision, in which we held that the BTA was wrong about the facts. On that basis, we reversed and remanded for a new valuation of the property. Quite simply, *NFI* does not stand for the proposition for which the BOE cites it.

{¶ 32} Finally, the BOE asserts that Horner's decision not to perform a cost-approach analysis makes the adoption of his valuation a reversible error. We disagree. Although it is true that a cost-approach analysis can be probative when the property at issue is new, the decision whether to employ that approach lay within the expertise of the appraiser, and it is the fact-finder's duty to evaluate the probative force of the expert's opinion. We will not disturb the decision below merely because another expert might have found merit in performing a cost-approach analysis.

### Conclusion

**{¶ 33}** For the foregoing reasons, we affirm the decision of the BTA.

Decision affirmed.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Rich & Gillis Law Group, L.L.C., and Mark H. Gillis, for appellant.

Bluestone Law Group, L.L.C., and Charles L. Bluestone, for appellee Albany Commons, Ltd.

_____