[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision,* Slip Opinion No. 2017-Ohio-7650.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-7650

CINCINNATI SCHOOL DISTRICT BOARD OF EDUCATION, APPELLEE; QUEEN CITY TERMINALS, INC., APPELLANT, *v.* HAMILTON COUNTY BOARD OF REVISION ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision,* Slip Opinion No. 2017-Ohio-7650.]**

*Taxation—Real-property valuation—Board of Tax Appeals acted reasonably and lawfully in not reducing sale price by amount contractually allocated to goodwill—Decision affirmed.*

(No. 2015-0378—Submitted May 2, 2017—Decided September 20, 2017.)

APPEAL from the Board of Tax Appeals, Nos. 2012-1564 and 2012-1685.

_____

**Per Curiam.**

{¶ 1} Appellant, Queen City Terminals, Inc. ("Queen City"), appeals from a decision of the Board of Tax Appeals ("BTA") that adopted an allocated portion of a bulk-sale price as the property value for tax year 2011 for two parcels along

the Ohio River. On appeal, Queen City faults the BTA for not reducing the sale price by an amount that was contractually allocated to goodwill. Because the BTA acted reasonably and lawfully, we affirm its decision.

## FACTUAL BACKGROUND

{¶ 2} At issue is the 2011 value of real estate along the Ohio River, east of downtown Cincinnati, that is suitable for loading and unloading liquid products for river transport. The property consists of two parcels totaling about 7.811 acres, with a few small structures, some paving, five containment tanks, and moorings in the Ohio River. Queen City acquired the property as part of a $2.5 million bulk sale that was consummated in late 2010 or early 2011. The parties contractually allocated the purchase price to the real estate ($210,000); the containment tanks ($833,464), which were nontaxable personal property; a noncompete covenant ($12,500); and goodwill ($1,444,036).

{¶ 3} Queen City reported $1,043,460 as the sale price on the conveyance-fee statement, which is the sum of the amounts allocated to the real estate and the tanks. For tax year 2011, which was a sexennial reappraisal year in Hamilton County, the county auditor assigned a value of $1,043,460 to the real property. Queen City filed a complaint seeking a value of $210,000, the amount contractually allocated to real estate by the parties. The Cincinnati School District Board of Education ("BOE") filed a countercomplaint seeking retention of the auditor's valuation.

{¶ 4} At the hearing before the Hamilton County Board of Revision ("BOR"), Queen City presented documentation of the sale and the testimony of David Porter, who was a senior property-tax representative with Kinder Morgan, parent entity of the property owner. The BOE objected to Porter's testimony because of his lack of firsthand knowledge of the transaction. Additional testimony before the BOR was provided by an appraiser in the county auditor's real-estate office, Doug Thoreson, whose written report supported retaining the auditor's

2

valuation but whose testimony recommended that the contractual allocation to "goodwill" be added to the realty allocation.

{¶ 5} The BOR retained the auditor's valuation of $1,043,460, based on its finding that Queen City failed to directly refute it.

{¶ 6} Both the BOE and the property owner appealed to the BTA, with the former arguing that the value of the property should be $1,666,536 (the $2.5 million bulk-sale price less the $833,464 value of the holdings tanks) and the latter seeking a reduction to $210,000 (the amount contractually allocated to the real estate). At the BTA hearing, Queen City presented an appraisal report and testimony of Raymond A. Jackson, a member of the Appraisal Institute, opining a real-estate value of $430,000 based on a sales-comparison approach. Queen City argued that the appraisal provided support for the allocation of $210,000 to the real estate or, in the alternative, constituted direct evidence of a value of $430,000.

{¶ 7} The BTA accepted the $2.5 million bulk-sale transaction as a recent arm's-length transaction and found that $833,460 should be deducted based on the value of the tanks (which were nontaxable personal property), but it concluded that there was no evidence to support the other allocations. BTA Nos. 2012-1564 and 2012-1685, 2015 WL 970985, *1. It therefore valued the real estate at the $1,666,540—the $2.5 million sale price minus the $833,460 tank value. *Id*. at *2.

## ANALYSIS

### Deferential Standard of Review

{¶ 8} Pursuant to R.C. 5717.04, we review a BTA decision to determine whether it is "reasonable" and "lawful." In tax-valuation cases, it is settled that " '[t]he fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities,' " with the result that " 'this court will not disturb a decision of the Board of Tax Appeals with respect to such valuation unless it affirmatively appears from the record that such decision is unreasonable or unlawful.' " *Columbus City Schools*

*Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 148 Ohio St.3d 499, 2016-Ohio-7466, 71 N.E.3d 988, ¶ 19, quoting *Cardinal Fed. S. & L. Assn. v. Cuyahoga Cty. Bd. of Revision*, 44 Ohio St.3d 13, 336 N.E.2d 433 (1975), paragraph four of the syllabus. It follows that Queen City, as appellant, must affirmatively demonstrate that the decision below is unreasonable or unlawful.

**Queen City's Burden Was To Show a Proper Sale-Price Allocation**

{¶ 9} In *Conalco, Inc. v. Monroe Cty. Bd. of Revision*, 50 Ohio St.2d 129, 363 N.E.2d 722 (1977), we confronted a company's sale of its entire aluminum division, which held many assets, including some real estate; the court held that "[i]n valuing real property sold within three days of the tax lien date in an arm's length transaction, the best evidence of 'true value in money' is the proper allocation of the lump-sum purchase price and not an appraisal ignoring the contemporaneous sale." *Id.* at paragraph two of the syllabus. Since *Conalco*, our case law has settled the principle that "[a]n owner who favors the use of an allocated bulk-sale price to reduce the value assigned to real property must bear the burden of proving the propriety of the allocation." *RNG Properties, Ltd. v. Summit Cty. Bd. of Revision*, 140 Ohio St.3d 455, 2014-Ohio-4036, 19 N.E.3d 906, ¶ 36, citing *FirstCal Indus. 2 Acquisitions, L.L.C. v. Franklin Cty. Bd. of Revision*, 125 Ohio St.3d 485, 2010-Ohio-1921, 929 N.E.2d 426.

{¶ 10} The burden is not a heavy one; the owner must typically be able to point to " 'corroborating indicia' " in the record that supports the allocation. *Hilliard City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 139 Ohio St.3d 1, 2014-Ohio-853, 9 N.E.3d 920, ¶ 42, 46-47, quoting *Sapina v. Cuyahoga Cty. Bd. of Revision*, 136 Ohio St.3d 188, 2013-Ohio-3028, 992 N.E.2d 1117, ¶ 18. The burden may be satisfied if the "best available evidence" supports the proposed reduction from the full sale price. *Hilliard City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 128 Ohio St.3d 565, 2011-Ohio-2258, 949 N.E.2d 1, ¶ 18, 27. In evaluating the sufficiency of the proof, the allocation agreed to by the parties to

the asset purchase agreement is "relevant" in allocating for tax purposes, but it "is not sufficient by itself, because the motivations behind the allocation are crucial to a determination of its propriety for tax-valuation purposes." *RNG Properties* at ¶ 37. In other words, the mere fact that the parties to a bulk sale of assets have agreed to allocate a particular amount to real estate does not by itself establish the propriety of the allocation.

**{¶ 11}** In the absence of showing a proper allocation, either the full sale price constitutes the property value or, in a proper case, "complexities of the sale" may justify looking to appraisal evidence rather than the sale price to value the property. *Compare St. Bernard Self-Storage, L.L.C. v. Hamilton Cty. Bd. of Revision*, 115 Ohio St.3d 365, 2007-Ohio-5249, 875 N.E.2d 85, ¶ 11, 24-26, *with Consol. Aluminum Corp. v. Monroe Cty. Bd. of Revision*, 66 Ohio St.2d 410, 414, 423 N.E.2d 75 (1981).

### The BTA Reasonably Applied the Evidentiary Standard

**{¶ 12}** Here, the parties agreed and the BTA found that the contractual allocation of $833,464 to the personal property, the tanks themselves, was justified. The parties to the bulk sale determined that amount based on the tanks' replacement cost less depreciation. *Accord Jefferson Industries Corp. v. Madison Cty. Bd. of Revision*, 148 Ohio St.3d 181, 2016-Ohio-7089, 69 N.E.3d 701, ¶ 26, quoting International Association of Assessing Officers, *Property Assessment Valuation* 131 (2d Ed.1996) (defining replacement cost as " 'the cost of producing a building or improvement having the same utility, but using modern materials, design, and workmanship' "). The BTA's finding was reasonable, because the allocation to the tanks indicated that the value came from an underlying analysis, which was included in the material submitted by the owner to the BOR. Moreover, the BOE agreed that the deduction for the tanks was supported by evidence. Thus, the deduction is both facially reasonable and stipulated as being such.

**{¶ 13}** By contrast, the BTA determined that the allocation to goodwill was *not* adequately supported in the record, and it therefore assigned all the remaining bulk-sale price to the real estate. This too was eminently reasonable in spite of the contracting parties' contemporaneous allocation to goodwill—both because the record does not substantiate a going-concern or goodwill-type asset as constituting part of the sale agreement and because the modest allocation to real estate was not independently supported.

**{¶ 14}** As to the first point, the few pages of the purchase agreement that were offered into evidence specify tangible personal property and real property as part of the sale —but no intangible assets such as customer lists or existing contracts are referred to in the portions of the agreement produced. If such assets were referenced elsewhere in the agreement, Queen City had the burden to produce those portions of the agreement. Absent corroborating evidence, there is no foundation for the large allocation to goodwill.

**{¶ 15}** As for real-estate value allocation, the underlying documentation refers to "[f]air market value based on property tax appraisal at $35,000/acre." Porter testified at the BOR hearing that the contract parties "pulled this right from Liquid Transfer Terminal's appraisal records where the land was basically assessed at $35,000 [per acre]." Thoreson, the appraiser from the auditor's real-estate department, testified that the county had never valued the property at $35,000 an acre.

**{¶ 16}** Furthermore, Thoreson gave his opinion that the moorings in place along the riverfront on the property, which would be difficult to get approved if the property did not come with them already installed, were realty and a major portion of the real estate's worth. Indeed, Thoreson opined that "this property does not exist for its use" without the moorings, and he expressed the view that the "goodwill is sitting in the river," meaning that the moorings, as part of the real estate, added value so that the proper valuation of the real estate was to add the $210,000

allocation to the goodwill allocation. Thoreson derived his opinion from knowledge that he had obtained from investigating other similar properties. The BTA's decision to view the goodwill as intertwined with the real estate receives strong support from Thoreson's opinion.

### The BTA Reasonably Rejected the Owner's Appraisal

{¶ 17} Addressing the owner's appraisal, the BTA stated that it did not constitute "sufficient evidence to support an allocation of the sale price" because "it attempts to bypass the utility of the sale at issue by relying on the transfers of other properties rather than the subject itself." BTA Nos. 2012-1564 and 2012-1685, 2015 WL 970985, at *1. The BTA's approach is legally justified under *Conalco*, 50 Ohio St.2d 129, 363 N.E.2d 722, and is confirmed by the cross-examination of the appraiser, which raised questions about the comparability of the properties used.

### Queen City Fails To State a Constitutional Claim

{¶ 18} In its third proposition of law, Queen City argues that the BTA decision violates its rights as a property owner under the Unites States and Ohio Constitutions. Specifically, Queen City argues that by including "goodwill" in the value of real estate, the assessment below allegedly taxes intangible personal property. This claim evaporates because the BTA's findings are supported by the record, which indicates that most of the sale price is in fact attributable to the real estate.

### CONCLUSION

{¶ 19} For the foregoing reasons, we reject the Queen City's contentions on appeal and affirm the decision of the BTA.

Decision affirmed.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, O'NEILL, FISCHER, and DEWINE, JJ., concur.

_____

David C. DiMuzio, Inc., and David C. DiMuzio, for appellee Cincinnati School District Board of Education.

Vorys, Sater, Seymour & Pease, L.L.P., Karen H. Bauernschmidt, and Nicholas M.J. Ray, for appellant.

Joseph Deters, Hamilton County Prosecuting Attorney, and Thomas J. Sheve and Jeremiah Seebohm, Assistant Prosecuting Attorneys, for appellee Hamilton County Auditor.

_____