[Cite as *Remington Clean Fill, L.L.C. v. Milford Exempted Village Schools Bd. of Edn.*, 2021-Ohio-3779.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| REMINGTON CLEAN FILL LLC, | : | CASE NO. CA2020-12-074 |
| Appellant, | : | O P I N I O N<br>10/25/2021 |
| | : | |
| - vs - | : | |
| | : | |
| MILFORD EXEMPTED VILLAGE<br>SCHOOLS BOARD OF EDUCATION,<br>et al., | : | |
| | : | |
| Appellees. | | |

APPEAL FROM THE OHIO BOARD OF TAX APPEALS
BTA No. 2019-1288

Aronoff, Rosen & Hunt LPA, and Edward P. Akin and Richard A. Paolo, for appellant.

David C. DiMuzio, Inc., and David C. DiMuzio and Matthew C. DiMuzio, for appellee, Milford Exempted Village Schools Board of Education.

Mark J. Tekulve, Clermont County Prosecutor, and Jason A. Fountain, Assistant Prosecuting Attorney, for appellees, Clermont County Board of Revision and Clermont County Auditor.

Dave Yost, Ohio Attorney General, for appellee, Ohio Tax Commissioner.


**M. POWELL, J.**

{¶ 1}  Appellant, Remington Clean Fill LLC ("Remington"), appeals a decision of the

Board of Tax Appeals ("BTA") which adopted $2,184,004 as the property value for tax year 2018 for two adjoining parcels located in Loveland, Ohio (the "Property").

### I. Facts and Procedure

{¶ 2} The Clermont County Auditor valued the Property at $690,900 for tax year 2018. On April 9, 2018, the Property was transferred twice as part of a sale including real property and personalty for a single purchase price – a type of sale commonly known as "bulk sale." *See Buckeye Terminals, L.L.C. v. Franklin Cty. Bd. of Revision*, 152 Ohio St.3d 86, 2017-Ohio-7664. In the first sale, McDump, LLC ("McDump"), sold the Property to Decker Building Group LLC ("Decker Building") for a total purchase price of $2,184,000. The conveyance-fee statement allocated $1,684,000 of the purchase price toward real property and $500,000 toward personalty. In the second sale, Decker Building sold the Property to Remington for a total purchase price of $2,500,000. The conveyance-fee statement allocated $900,000 of the purchase price toward real property and $1,600,000 toward personalty. Decker Building and Remington are both owned by Jeffrey Decker.

{¶ 3} Milford Exempted Village School District Board of Education ("school board") subsequently filed an increase complaint with the Clermont County Board of Revision ("BOR"), challenging the auditor's valuation and requesting that the true value of the Property be increased to $1,684,000, based upon the conveyance-fee statement of the first sale.

{¶ 4} At the BOR hearing, the school board argued that the first sale should be adopted as evidence of the Property's true value because the second sale was not an arm's length transaction as Jeffrey Decker owned both Decker Building and Remington and signed for both companies on the closing statement. Remington argued that the Property included stockpiles of gravel and dirt, equipment, and inventory, which are personalty and should be valued according to the conveyance-fee statement of the second sale.

Remington presented the testimony of Jeffrey Decker ("Jeffrey") and Chase Decker ("Chase"), Jeffrey's son and co-owner of Remington (the father and son will be collectively referred to as the Deckers).

{¶ 5} Jeffrey testified that the Property was bought specifically for its stockpiles of dirt and gravel, equipment, and inventory. Jeffrey testified that McDump refused to allocate more than $500,000 of the $2,184,000 purchase price to personalty, and advised it had a second buyer on standby if Decker Building declined the terms of the transaction. Decker Building proceeded with the first sale using McDump's allocation and, based upon legal advice, corrected the allocation with the second sale. Jeffrey opined that McDump's allocation was driven by "capital gains or income tax."

{¶ 6} During Jeffrey's testimony, counsel for the school board referred to the addendum included in the closing statement for the second sale. The addendum itemizes, quantifies, and values the personalty included in the sale as follows:

 a. $50,000.00 for two 5-ton overhead cranes;
 b. $50,000.00 for two earthmovers;
 c. $50,000.00 for scrap metal;
 d. $10,000.00 for GMC 10-ton single axle dump truck;
 e. $200,000.00 for 10,000 tons of blacktop grindings valued at $20 per ton;
 f. $1,000,000.00 for 200,000 yards of dirt valued at $5 per yard;
 g. $200,000.00 for 10,000 tons of mixed gravel valued at $20 per ton;
 h. $25,000.00 for an industrial sandblaster; and
 i. $15,000.00 for an industrial arc welder.

Jeffrey could not remember who prepared the addendum, stated they worked with attorneys, and testified, "we did a competitor analysis based on what material was selling for in the general market."

{¶ 7} The school board's counsel inquired of Jeffrey concerning the $1,000,000 valuation for dirt. Jeffrey advised, "I've been developing for 30 years, I know what dirt costs." Jeffrey testified that the $1,000,000 allocation toward dirt was actually a third of its

value according to industry standards and that every listed item of personalty was in fact undervalued. No other documentation was provided regarding the valuation of the personalty.

{¶ 8} Chase also testified concerning the valuation of the various personalty items enumerated in the addendum. Chase testified that he and Jeffrey had been in the business for 15 years and 30 years, respectively, and were "experts on dirt moving equipment." Chase stated that the amount of dirt on the Property was conservatively estimated to be 200,000 yards and that the $1,000,000 allocation toward the dirt was actually undervalued.[1] Chase stated that the values listed on the addendum for the dirt ($1,000,000), the blacktop grindings ($200,000), and the mixed gravel ($200,000) were conservative estimates of sales prices his company received for those materials (the dirt, blacktop grindings, and mixed gravel will be collectively referred to as the "Materials"). Chase testified that the value for the other items listed in the addendum, to wit, the cranes, earthmovers, scrap metal, dump truck, sandblaster, and arc welder, were determined based upon Internet research and third parties' opinions (these other items listed in the addendum will be collectively referred to as the "Equipment"). The third parties consulted by the Deckers were not identified and none of them testified.

{¶ 9} Theresa Mahon, a commercial appraiser for the auditor's office, testified that she has been engaged in commercial appraising for 30 years, with certifications in Ohio, Kentucky, and Indiana. Mahon testified that she did not know which sale was truly an arm's length transaction, that she did not have the expertise to say whether the personalty allocation in the second sale was reasonable, and that the personalty allocation in the second sale had "more support than what I see on the first sale." Mahon asserted that she

---

1. Referring to a photograph of the dirt stored on the Property, Chase testified that "this entire hillside, this huge bank right here is over 300,000 yards of dirt."

had reviewed the auditor's $690,900 valuation of the Property to confirm that "we have the right acreage, * * * the right adjustments on there for the configuration and these types of things that we value land according to."  Based upon the foregoing, Mahon advocated for the retention of the auditor's valuation.

{¶ 10} The BOR retained the auditor's $690,900 valuation, and the school board appealed to the BTA.  At the BTA, the parties waived a hearing and presented their arguments through briefs, relying upon the BOR record.  The record included the conveyance-fee statement for each sale, closing statements for both sales, and the closing statement addendum of the second sale.  The school board argued that the first sale was the only arm's length transaction; there was no evidence to support the first sale's $500,000 allocation toward personalty; and Remington specifically stated that the first sale's personalty allocation did not reflect the value of the personalty.  Accordingly, the school board argued that the total purchase price of $2,184,000 of the first sale should be adopted as the true value of the Property.

{¶ 11} The BTA issued its decision on November 30, 2020.  It noted that a recent, arm's length sale constitutes the best evidence of a property's value.  It defined an arm's length sale as one that is voluntary, i.e., without compulsion or duress, and that takes place in an open market in which the parties to the sale act in their own self-interest.  The BTA found that the second sale between Decker Building and Remington was not an arm's length sale because it was a transaction "from one of Mr. Decker's companies to another solely for tax purposes."  The BTA further rejected Remington's evidence of its personalty valuation in the second sale.  The BTA found that Remington "supplied no confirmable evidence about what resources it used to value the property, e.g., internet websites," that the third parties' opinions as to valuation was hearsay, and that Chase, the sole witness regarding valuation, was not an appraiser.

{¶ 12} By contrast, the BTA found that the first sale between McDump and Decker Building was an arm's length transaction because it occurred in an open market with multiple bidders and Decker Building was not under economic duress. Nonetheless, the BTA found that the $500,000 allocation toward personalty was not supported because "Remington agrees the earlier allocation was incorrect. In fact, it completed the second transfer to 'fix' the allocation in the first transaction. Therefore, we must find the allocation in the first transfer is unsupported, and the property must be valued according to the full purchase price." Accordingly, the BTA valued the Property at the full purchase price of $2,184,004, thereby allocating $0 of the purchase price to personalty.

{¶ 13} Remington now appeals, raising three assignments of error. For ease of discussion, we will address the assignments of error out of order.

## II. Proceedings before the BTA.

{¶ 14} "In an appeal from a county board of revision's valuation decision, the BTA must determine the taxable value of the property at issue." *Buckeye*, 2017-Ohio-7664 at ¶ 14. The fair market value of property for tax purposes is a question of fact that is primarily within the province of the taxing authorities. *Id.* "The BTA has the duty, in a real-property-valuation case, to independently weigh and evaluate all evidence properly before it in arriving at its own decision." *Sapina v. Cuyahoga Cty. Bd. of Revision*, 136 Ohio St.3d 188, 2013-Ohio-3028, ¶ 25. "Any finding of fact by the BTA must be supported by the evidence." *Columbus City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 90 Ohio St.3d 564, 565, 2001-Ohio-16.

{¶ 15} A BTA's valuation decision will not be disturbed unless it affirmatively appears from the record that the decision is unreasonable or unlawful. *Buckeye* at ¶ 14. A BTA's determination of the credibility of witnesses and the weight to be given their testimony will not be reversed absent an abuse of discretion. *Id.*; *Eastbrook Farms, Inc. v. Warren Cty.*

- 6 -

*Bd. of Revision*, 12th Dist. Warren No. CA2017-12-171, 2018-Ohio-2886, ¶ 15. A BTA finding is unreasonable and unlawful and will be reversed where the record is devoid of any evidence from which the determination could be made. *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 140 Ohio St.3d 248, 2014-Ohio-3620, ¶ 22. It follows that Remington, as the party appealing the BTA decision, must affirmatively demonstrate that the BTA decision is unreasonable or unlawful. *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 151 Ohio St.3d 109, 2017-Ohio-7650, ¶ 8.

{¶ 16} Furthermore, proceedings before a board of revision "are not governed by the Rules of Evidence." *Dayton Supply & Tool Co. v. Montgomery Cty. Bd. of Revision*, 111 Ohio St.3d 367, 2006-Ohio-5852, ¶ 24. Likewise, "the Rules of Evidence are not binding at the BTA, * * * [but] they may be used for guidance." *Columbus City Schools Bd. of Education v. Franklin Cty. Bd. of Revision*, 159 Ohio St.3d 283, 2020-Ohio-353, ¶ 19.

### III. Analysis

{¶ 17} Assignment of Error No. 3:

{¶ 18} THE BTA IMPROPERLY SHIFTED THE BURDEN OF PRODUCTION TO THE TAXPAYER, WHICH WAS NOT THE CHALLENGER TO THE AUDITOR'S OR THE BOR'S VALUATION IN THE FIRST TWO PROCEEDINGS.

{¶ 19} In its third assignment of error, Remington argues that the BTA erred in requiring that it carry the burden of production as to the personalty allocation it sought. Remington asserts that the burden was on the school board, as the party that challenged both the auditor's valuation of the Property and the BOR's decision. In support of this argument, Remington cites the 2001 *Columbus* decision cited above which held, "When cases are appealed from a board of revision to the BTA, the burden of proof is on the appellant, whether it be a taxpayer or a board of education, to prove its right to an increase or decrease from the value determined by the board of revision." *Columbus*, 90 Ohio St.3d

at 566.

{¶ 20} However, unlike the case at bar, *Columbus* did not involve a bulk sale. The Ohio Supreme Court has defined a bulk sale as follows: "Unlike a simpler transaction where a single parcel of real property is sold individually, a bulk sale may involve the sale of all the assets of a business, whereby a parcel of real property constitutes one of many business assets sold at the same time for an aggregate sale price." *St. Bernard Self-Storage, L.L.C. v. Hamilton Cty. Bd. of Revision*, 115 Ohio St.3d 365, 2007-Ohio-5249, ¶ 15. "Alternatively, a bulk sale may consist of a sale of numerous real estate parcels at an aggregate price as part of a single deal." *Id.*

{¶ 21} Case law shows that the supreme court treats property valuation in bulk-sale cases differently regarding the burden of proof. In *Buckeye*, the court held, "A school board, as the proponent of using a reported sale price to value real property, makes a prima facie case when it submits basic documentation of the sale – the conveyance fee and deed. The conveyance fee and deed create a rebuttable presumption that the sale met the requirements that characterize true value." (citation omitted.) *Buckeye*, 2017-Ohio-7664 at ¶ 20. However, when the taxpayer/property owner "opposes the use of the allocated value it reported on [the] conveyance-fee statement, it bears the burden of demonstrating that the reported value does not properly reflect the true value of the parcel." *Id.* at ¶ 21. *See also Cincinnati*, 2017-Ohio-7650 at ¶ 9 (it is a settled principle that an owner who favors the use of an allocated bulk-sale price to reduce the value assigned to real property must bear the burden of proving the propriety of the allocation). *Bedford Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 132 Ohio St.3d 371, 2012-Ohio-2844, ¶ 21 (when a school board advocates using the allocated sale price reported on a conveyance-fee statement, the burden of rebuttal rests on the owner because the owner is the party most likely to possess the information that could justify or refute the propriety of the allocation).

{¶ 22} As the proponent of using the purchase price of the first sale to value the Property, the school board submitted the conveyance-fee statement of the first sale at the BOR hearing and on appeal to the BTA and therefore made a prima facie case. *Buckeye* at ¶ 20. Remington opposes the use of the personalty's allocated value in the first sale on the ground that allocation does not reflect the personalty's true value, and claims it is instead accurately reflected on the conveyance-fee statement of the second sale. However, because the second sale was a related-party transaction, as opposed to an arm's length transaction, the presumption that the second sale's allocation of the purchase price reflects the true value of the Property does not arise. *See* R.C. 5713.03; *Hilliard City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 154 Ohio St.3d 449, 2018-Ohio-2046, ¶ 12-13; *Cincinnati Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 78 Ohio St.3d 325, 328, 1997-Ohio-212; *see also Columbus*, 2020-Ohio-353 at ¶ 28-29. Thus, Remington bears the burden of proving the propriety of the allocation in the second sale. The BTA therefore did not err in shifting the burden of production to Remington.

{¶ 23} Remington's third assignment of error is overruled.

{¶ 24} Assignment of Error No. 1:

{¶ 25} THE BTA FAILED TO CONSIDER THE OWNER'S EVIDENCE OF VALUE OF PERSONALTY.

{¶ 26} Remington generally argues that the BTA erred in valuing the Property at $2,184,004 – the full purchase price in the first sale.[2] Specifically, in its first assignment of error, Remington argues that the BTA erred in discounting the Deckers' testimony regarding the allocated value of the personalty in the second sale. Remington asserts such testimony

---

2. As stated above, this appeal involves two adjoining parcels. McDump sold the Property to Decker Building for a full purchase price of $2,184,000. In its decision, the BTA valued one parcel at $894,910 and the other parcel at $1,289,094, thus valuing the Property at $2,184,004. There is therefore a $4 discrepancy between the first sale full purchase price and the BTA's valuation of the Property.

should have been accepted pursuant to the owner-opinion rule.

{¶ 27} As set forth in the discussion of the third assignment of error, Remington, as the party opposing the use of the first sale's allocation of value and advocating acceptance of the second sale's allocation, bears the burden of proving the propriety of the allocation in the second sale. "The burden is not a heavy one; the owner must typically be able to point to 'corroborating indicia' in the record that supports the allocation." *Cincinnati*, 2017-Ohio-7650 at ¶ 10; *Bedford*, 2012-Ohio-2844 at ¶ 36 (all that is required is some additional increment of corroborating evidence beyond the bare fact of allocation in the conveyance-fee statement itself). "The burden may be satisfied if the 'best available evidence' supports the proposed reduction from the full sale price." *Cincinnati* at ¶ 10. "With a bulk sale, the best evidence of true value 'is the proper allocation of the lump-sum purchase price' to individual parcels." *Buckeye*, 2017-Ohio-7664 at ¶ 18. "As opposed to a single-parcel sale, a bulk sale raises the additional question 'whether the proffered allocation of bulk sale price to the particular parcel of real property is proper,' which is the same as asking whether the amount allocated reflects the true value of the parcel for tax purposes." *Id.*

{¶ 28} "In evaluating the sufficiency of the proof, the allocation agreed to by the parties to the asset purchase agreement is 'relevant' in allocating for tax purposes, but it 'is not sufficient by itself, because the motivations behind the allocation are crucial to a determination of its propriety for tax-valuation purposes.'" *Cincinnati* at ¶ 10. "In other words, the mere fact that the parties to a bulk sale of assets have agreed to allocate a particular amount to real estate does not by itself establish the propriety of the allocation." *Id.* Thus, "such an allocation is not to be taken as indicative of the value of the real property at issue unless other indicia on the face of the contract, the circumstances attending the allocation, or some other independent evidence establishes the propriety of the allocation." *St. Bernard*, 2007-Ohio-5249 at ¶ 19.

{¶ 29} "When the allocated amount is improper, i.e., does not accurately reflect the true value of the property, the BTA must review and weigh all competent evidence in the record to determine the property's true value." *Buckeye*, 2017-Ohio-7664 at ¶ 22. When the propriety of the allocation has not been shown, the BTA must choose between two alternatives: either the full purchase price constitutes the property value or the BTA disregards the purchase price and looks at other evidence of value, such as an appraisal of the parcel at issue. *Cincinnati*, 2017-Ohio-7650 at ¶ 11; *Sapina*, 2013-Ohio-3028 at ¶ 22.

{¶ 30} At the BOR hearing, the school board argued that the Property's value should be increased to $1,684,000, the value allocated to the real property in the first sale. By contrast, Remington argued that McDump's $500,000 allocation to the personalty in the first sale was incorrect (and therefore so was the real property allocation), because it was imposed by McDump for "capital gains or income tax" purposes. Remington argued that the personalty allocation in the second sale reflected the true value of the personalty and presented the Deckers' testimony in support. On appeal to the BTA, based upon the Deckers' testimony that the personalty allocation in the first sale was incorrect, the school board argued that the full purchase price of $2,184,000 in the first sale was the Property's true value. The BTA found that the first sale was the only arm's length transaction, discounted the Deckers' testimony regarding the personalty allocation in the second sale, and found no support for the $500,000 personalty allocation in the first sale given the Deckers' testimony that the allocation was incorrect and had to be corrected in the second sale.

{¶ 31} Remington argues that the BTA improperly discounted the Deckers' testimony regarding the $1,600,000 personalty allocation in the second sale. Remington asserts the Deckers were competent to testify about the value of the personalty and their testimony

should have been accepted under the owner-opinion rule.

{¶ 32} Ordinarily, testimony as to property value is not competent and admissible unless it is the professional opinion of an expert. *See Tokles & Son, Inc. v. Midwestern Indem. Co.,* 65 Ohio St.3d 621 (1992), paragraph one of the syllabus. However, under the owner-opinion rule, the owner of either real or personal property is, by virtue of such ownership, competent to testify about the market value of the property, even if he or she is not qualified as an expert. *Smith v. Padgett,* 32 Ohio St.3d 344, 347 (1987). "Important in the owner-opinion rule, however, is that the owner qualifies primarily as a fact witness giving information about his or her own property; usually the owner may not testify about comparable properties, because that testimony would be hearsay." *Worthington*, 2014-Ohio-3620 at ¶ 19. Furthermore, the weight accorded to such testimony is a matter for the BTA to determine. *Valigore v. Cuyahoga Cty. Bd. of Revision*, 105 Ohio St.3d 302, 2005-Ohio-1733, ¶ 5. The BTA may accept all, part, or none of a witness's testimony. *Id.*

{¶ 33} The BTA rejected Chase's testimony concerning the valuation of the personalty for two reasons. First, because it was hearsay. That is, because Chase relied upon Internet research and the opinions of third parties. Second, because Chase was not an appraiser and therefore not qualified to express an expert opinion of value.

{¶ 34} Contrary to the BTA's findings, Chase did not rely upon Internet research and third-party opinions in valuing the Materials. Chase's testimony regarding the value of the Materials was based not only upon his opinion as owner but also his extensive experience in an industry involving the use and sale of materials such as dirt, blacktop grindings, and gravel.[3] Although Chase was not an "appraiser" he was nonetheless qualified by

---

3. The same may be said for Jeffrey's testimony regarding valuation of the dirt.

experience to express an opinion regarding the value of the Materials.[4]  Because Chase's testimony concerning the value of the Materials was not hearsay and he was competent to express an opinion of the value of the Materials as their owner and an expert, the BTA abused its discretion by rejecting his testimony for those reasons.[5]

{¶ 35} On the other hand, Chase's testimony concerning the value of the Equipment presents a different analysis.  As owner of the Equipment, Chase was competent to testify as to its valuation pursuant to the owner-opinion rule.  However, the owner-opinion rule deals solely with a property owner's competency to testify about his or her opinion of value; the rule relates to the admissibility of the owner's testimony, not its weight.  *Worthington*, 2014-Ohio-3620 at ¶ 19.  Chase provided no testimony concerning the valuation of two of the Equipment items, one item's valuation was based upon the cash the Deckers received upon selling the item, and the valuation of the remaining items were based upon "collected data and information," appraisals, comparables found on the Internet, and one individual's quote.  No documentation was provided to substantiate the items' allocated value.  The Deckers did not expressly state a personal opinion of value; their testimony was derived from Internet research and opinions of third parties and was therefore hearsay and was otherwise undocumented.  *See Worthington*; *Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision*, 152 Ohio St.3d 331, 2017-Ohio-8843.  The BTA therefore did not abuse its discretion by discounting Chase's testimony regarding valuation of the

---

4. As indicated above, the Rules of Evidence are not strictly applicable to proceedings before the BTA but may be consulted for guidance.  Apparently the BTA did rely upon the Rules of Evidence in rejecting Chase's testimony on the ground it was hearsay and he was not an appraiser (i.e., an expert).  However, Evid.R. 702 allows a person to testify as an "expert" where "[t]he witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony."

5. As discussed above, the Rules of Evidence are inapplicable to BOR proceedings.  Additionally, hearings before the BOR are not conducted with the formalities attendant to court proceedings.  Bearing this in mind, we believe Chase's testimony before the BOR established his competency to provide expert testimony regarding the valuation of the Materials.

Equipment.

{¶ 36} Remington's first assignment of error is sustained in part and overruled in part.

{¶ 37} Assignment of Error No. 2:

{¶ 38} THE BTA IGNORED THE TAXPAYER'S TESTIMONY THAT THE SELLER CRAMMED DOWN AN ARTIFICIALLY LOW ALLOCATION OF PERSONAL PROPERTY OUT OF TAX MOTIVATIONS.

{¶ 39} In its second assignment of error, Remington argues the BTA erred in concluding that the first sale was the best guidepost for valuing the Property, yet simultaneously disallowing any allocation of that purchase price toward personalty. Remington asserts the BTA decision improperly ignores Jeffrey's testimony that McDump's low personalty allocation was done for tax purposes.

{¶ 40} "[J]ust as the parties to a sale of real property can allocate for purposes that genuinely relate to the true value of the properties, they can also allocate for other purposes that may 'distort the true value of the subject property' in a given case." *Bedford*, 2012-Ohio-2844 at ¶ 24. "Tax considerations * * * can affect an allocation in ways that make it unreflective of the value of the individual properties. In an extreme case, the parties to a sale of multiple parcels of real property might allocate for the specific purpose of reducing real property taxes[.]" *Id.* at ¶ 25. The Ohio Supreme Court has recognized other tax considerations as significant in this regard in the context of both real and personal property taxation. *Id. See Dublin Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 80 Ohio St.3d 450, 1997-Ohio-327 (use of allocated sale price to value property was rejected when the amount allocated to the property had been artificially inflated for negotiation and tax-avoidance purposes); *Heimerl v. Lindley*, 63 Ohio St.2d 309 (1980) (allocation of asset purchase price was not a reasonable reflection of the true value when allocation was intended to maximize federal income-tax advantage).

- 14 -

{¶ 41} McDump's motivation to insist upon the allocation reflected in the conveyance-fee statement for the first sale introduced a complicating factor into the sale and the allocation of the purchase price.  The Ohio Supreme Court has held that when the propriety of an allocation has not been shown, "'complexities of the sale' may justify looking to appraisal evidence rather than the sale price to value the property."  *Cincinnati*, 2017-Ohio-7650 at ¶ 11.  Such evidence was present in Mahon's testimony.  Considering the obvious "complexities" of this sale, the BTA erred in failing to give any consideration to Mahon's testimony concerning the auditor's appraisal which valued the Property at $690,900.

{¶ 42} The BTA further ignored the testimony regarding the tax considerations involved in the first sale allocation.  In doing so, "the BTA failed to consider whether it is sufficient to negate the validity of using the allocated sale price."  *Bedford*, 2012-Ohio-2844 at ¶ 29.

{¶ 43} Remington's second assignment of error is sustained.

### IV. Conclusion

{¶ 44} The evidence unequivocally establishes that the sale included considerable personalty that has some, if not substantial, value.  Based upon the foregoing, we find that the BTA decision valuing the Property at the full $2,184,000 purchase price is unreasonable and unlawful.  *See Sapina*, 2013-Ohio-3028.  We therefore vacate the BTA decision and remand so that the BTA may consider the following: the probative value of Chase's testimony regarding the valuation of the Materials and determine its effect on the propriety of the allocation for purposes of valuing the Property; whether the testimony concerning the tax considerations involved in the first sale allocation is sufficient to negate the validity of using the allocation of the purchase price from the first sale; and Mahon's testimony concerning the county auditor's appraisal.  On remand, the BTA may decide the matter on

the record or exercise its discretion to hear additional evidence and make such investigations as it deems proper. R.C. 5717.01; *Columbus*, 90 Ohio St.3d at 567 (remanding to the BTA for an independent determination of value and noting the BTA's authority under R.C. 5717.01); *Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 139 Ohio St.3d 212, 2014-Ohio-1940, ¶ 31 (same).

{¶ 45} Judgment affirmed in part, reversed in part, and cause remanded.

PIPER, P.J., and BYRNE, J., concur.