DUBLIN CITY SCHOOL DISTRICT BOARD OF EDUCATION, APPELLANT, *v.* FRANKLIN COUNTY BOARD OF REVISION ET AL., APPELLEES.

[Cite as *Dublin Bd. of Edn. v. Franklin Cty. Bd. of Revision* (1997), 80 Ohio St.3d 450.]

*Taxation — Real property valuation — True value of 340-unit apartment complex — Board of Tax Appeals' finding that allocated purchase price did not correspond with property's fair market value reasonable and lawful, when.*

(No. 97-34 — Submitted July 22, 1997 — Decided December 31, 1997.)

APPEAL from the Board of Tax Appeals, No. 95-J-948.

On November 18, 1994, Merry Land & Investment Company, Inc., appellee, purchased a portfolio of twelve properties from Fogelman Secured Equity, L.P., for $154,413,500. This portfolio included Saw Mill Village, a 340-unit apartment complex in the Dublin City School District. Merry Land and Fogelman allocated $19,591,212.81 of the total purchase price to Saw Mill Village.

For tax year 1994, the Franklin County Auditor, appellant, had valued Saw Mill Village at $15,400,000. Noting the November sale, the Dublin City School District Board of Education ("Dublin"), appellant, filed a complaint with the Franklin County Board of Revision ("BOR"), appellee, asserting that the true value of the property for tax year 1994 was the amount Merry Land had allocated to it. Merry Land filed a counter-complaint seeking to maintain the auditor's value. The BOR affirmed the auditor's value, and Dublin appealed to the Board of Tax Appeals ("BTA").

At the BTA's hearing, Dublin presented a certified copy of the real property conveyance fee statement for the sale and a certified copy of the warranty deed. These documents indicated that the purchase price for the property was $19,591,212.81.

Merry Land presented as a witness Dorrie Green, its vice-president of administration, to refute Dublin's claim that the BTA should treat the allocated price as the true value of Saw Mill Village. Green testified about Merry Land's strategy in purchasing the properties and allocating the purchase amount to Saw Mill Village. Green testified that Merry Land established an artificially high allocated price for Saw Mill Village because it planned to sell the property shortly after the purchase. It planned to do this because it owned and operated apartment properties in the southern United States and did not desire to operate a northern property. A high allocated price, according to Green, would place it in a better negotiating position with potential buyers. Furthermore, Merry Land was a real estate investment trust, and any gain on a sale of property within four years of its purchase would result in the gain being taxed for federal income taxes at one hundred percent. A high allocated price would, thus, lessen Merry Land's income tax exposure. Finally, Merry Land had the option to delete any properties from the purchase if the cost to repair any property's defects exceeded a certain figure. Merry Land hoped to delete Saw Mill Village from the purchase for this reason. A high allocated amount would, consequently, reduce the overall purchase price disproportionately.

Dublin objected to Green's testimony, claiming that he lacked personal knowledge of Merry Land's strategy in allocating the purchase price because he did not directly negotiate the sale. The BTA, however, overruled Dublin's objection and ruled that it would give this testimony "whatever weight we may afford it." The BTA afforded his testimony considerable weight in deciding this case.

The BTA found, in accord with the witness's testimony, "that the price allocated to the subject property was based on the business needs of the company,

and not upon market value. * * * In this instance, therefore, the Board finds that the allocated purchase price does not correspond with the property's fair market value. The allocation was based upon factors which had no connection with the property's true value. Although the purchase price of the entire package may have been negotiated, the price of the subject was not."

After finding that the allocated price was not the value of the property, the BTA reviewed, but rejected, an appraisal presented by Merry Land. The BTA declared that Dublin had the burden of going forward to establish a value different from the value found by the BOR and found that Dublin had not sustained this burden. The BTA concluded that the evidence supports the conclusion reached by the auditor and the BOR. Accordingly, the BTA adopted the BOR's value, $15,400,000.

This cause is now before this court upon an appeal as of right.

_____

*Teaford, Rich & Wheeler, Jeffrey A. Rich* and *Carol Cassell Fox*, for appellant.

*Ronald J. O'Brien*, Franklin County Prosecuting Attorney, and *Matthew H. Chafin*, Assistant Prosecuting Attorney, for appellees Franklin County Board of Revision et al.

*Fred Siegel Co., L.P.A.,* and *Annrita S. Johnson*, for appellee Merry Land & Investment Co., Inc.

_____

**Per Curiam**. Dublin argues that the BTA based its decision on inadmissible hearsay testimony and that the BTA unreasonably found that the allocated price was not the true value of the property. We disagree and affirm the BTA's decision.

In its third proposition of law, Dublin argues that Green did not have personal knowledge of the facts about which he testified and that, consequently, the BTA should not have admitted or relied on his testimony. Dublin contends that Green's lack of personal knowledge violates Evid.R. 602, which prohibits a witness from testifying "to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter."

As we ruled in *Orange City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (1996), 74 Ohio St.3d 415, 417, 659 N.E.2d 1223, 1224, the BTA need not comply with the Rules of Evidence, but the rules may guide the BTA in conducting its hearings. Yet, as Dublin argues, personal knowledge by a witness of facts about which he testifies is a substantive rule of law that the BTA should observe. *Bucyrus v. Dept. of Health* (1929), 120 Ohio St. 426, 430, 166 N.E. 370, 371.

I McCormick on Evidence (4 Ed.1992) 40, in commenting on the requirement that a witness have firsthand knowledge of facts, states:

"One who has no knowledge of a fact except what another has told him cannot, of course, satisfy the present requirement of knowledge from observation. When the witness, however, bases his testimony partly upon firsthand knowledge and partly upon the accounts of others, the problem is one which calls for practical compromise. Thus when he speaks of his own age, or of his kinship with a relative, the court will allow the testimony. And when the witness testifies to facts that he knows partly at first hand and partly from reports, the judge, it seems, should admit or exclude according to the reasonable reliability of the evidence."

This quotation and the holding in *Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Services, Inc.* (1992), 81 Ohio App.3d 591, 611 N.E.2d 955, convince us that Green's testimony exhibits reasonable reliability and that the BTA did not err

4

in admitting and weighting it. In *Akron-Canton Waste Oil*, the court of appeals approved admitting the testimony of a secretary who testified about the intention of her corporate employer. The witness was in contact with the managers and corporate employees and, basically, ran the office during her tenure. She received instructions from her superiors to perform operations that disclosed their intentions. The appeals court, first, ruled that the trial court enjoyed broad discretion in admitting and excluding evidence, due to its superior vantage, and that the court of appeals would not reverse admitting evidence absent a clear showing of abuse, which the court of appeals did not find in that case. Then, the court of appeals concluded that the secretary had based her testimony on her personal knowledge. "Her description of her job duties also allowed an inference that she would be in a position to know the reasons for the various practices of the corporation." *Id.* at 597, 611 N.E.2d at 960.

In this case, Green's job allowed him similar access to information. According to his testimony, he attended and participated in corporate management meetings at which the sale and the strategy for allocating the purchase price were discussed. He oversaw "property taxes, insurance, financial reporting, corporate, federal and state income tax filings, among other things." His duties included administering the purchased properties. The BTA could infer that he collaborated in devising the allocation strategy and could find that he incorporated the allocation decision in his reporting and filing duties. Thus, he had sufficient personal knowledge of the facts on the strategy of the purchase and the price allocation. The BTA did not abuse its discretion in admitting the testimony or in granting it the weight that it did. *Orange City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision.*

5

In its first two propositions of law, Dublin essentially argues that the BTA's decision to reject the allocated purchase price for the given reasons was unreasonable. In *Conalco v. Monroe Cty. Bd. of Revision* (1977), 50 Ohio St.2d 129, 4 O.O.3d 309, 363 N.E.2d 722, paragraph two of the syllabus, we stated:

"In valuing real property sold within three days of the tax lien date in an arm's-length transaction, the best evidence of 'true value in money' is the proper allocation of the lump-sum purchase price and not an appraisal ignoring the contemporaneous sale."

Later, in a further appeal of that case, *Consol. Aluminum Corp. v. Monroe Cty. Bd. of Revision* (1981), 66 Ohio St.2d 410, 414-415, 20 O.O.3d 357, 360, 423 N.E.2d 75, 78, we stated:

"The Board of Tax Appeals is not required, in every instance, and in all events, to accept as the true value in money of real property, an allocation of a portion of a lump-sum purchase price paid for a group of assets which included the property in question, and where it finds a proper allocation of the lump-sum purchase price to the property in question is not possible it may consider all of the evidence which is before it in determining the true value in money of the property."

In this case, the BTA reasonably determined that the allocated purchase price was not the true value of the property. Merry Land allocated a lump-sum price among twelve properties. It settled on an allocation that benefited it for business reasons. As the BTA determined, the allocation did not reflect the true value of the property; instead, the allocation positioned Merry Land to gain a financial advantage on a planned, quick resale of the property.

*Tele-Media Co. of Addil v. Lindley* (1982), 70 Ohio St.2d 284, 24 O.O. 3d 367, 436 N.E.2d 1362, does not govern this case, as Dublin contends. In *Tele-*

6

*Media*, the taxpayer allocated a lump-sum purchase price to assets to take advantage of federal income tax rules, claimed the allocation was higher than true value, and listed a lower value in personal property tax returns filed with the Tax Commissioner. The *Tele-Media* court held that the taxpayer, to establish a lower true value than the sale price, had to prove that the allocation of the recent sale was not the best evidence of the true value and that another indicator more accurately represented the value. Ultimately, the court held that the taxpayer had not presented sufficient, probative evidence to sustain a finding that another indicator was a more accurate representative of the value.

Here, Dublin, as appellant, had the burden to persuade the BTA to increase the value. *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision* (1997), 78 Ohio St.3d 325, 677 N.E.2d 1197. It chose to stand on the allocated price. As a hedge against the BTA's rejecting this stand (indeed, the BOR had rejected this position), it should have set out to prove that another indicator established the true value of the property. It did not, and the BTA, without any other credible evidence, correctly adopted the value determined by the BOR. *Cleveland Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (1994), 68 Ohio St.3d 336, 626 N.E.2d 933; *Westlake Med. Investors, L.P. v. Cuyahoga Cty. Bd. of Revision* (1996), 74 Ohio St.3d 547, 660 N.E.2d 467.

Accordingly, we affirm the decision of the BTA because it is reasonable and lawful.

*Decision affirmed.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, J., dissents.

7