[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Buckeye Terminals, L.L.C. v. Franklin Cty. Bd. of Revision,* Slip Opinion No. 2017-Ohio-7664.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-7664

BUCKEYE TERMINALS, L.L.C., APPELLANT, *v.* FRANKLIN COUNTY BOARD OF REVISION ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Buckeye Terminals, L.L.C. v. Franklin Cty. Bd. of Revision,* Slip Opinion No. 2017-Ohio-7664.]

*Taxation—Real-property valuation—Board of Tax Appeals failed to consider whether property owner established that initially reported value was not accurate reflection of parcel's value and failed to independently determine its true value—Decision reversed as unreasonable and unlawful and cause remanded.*

(No. 2016-0495—Submitted June 20, 2017—Decided September 21, 2017.)

APPEAL from the Board of Tax Appeals, No. 2014-4958.

_____

FRENCH, J.

{¶ 1} This appeal involves the valuation for tax years 2011 through 2013 of a 37-acre parcel of real property located in the city of Columbus. Appellant,

Buckeye Terminals, L.L.C., appeals the decision of the Board of Tax Appeals ("BTA"), which adopted $8,492,910 as the property value. The BTA based its decision on the purchase price that Buckeye Terminals reported on a June 2011 conveyance-fee statement, despite Buckeye Terminals's contention that the reported price did not accurately reflect the true value of the real property. We reverse the BTA's decision and remand the matter to the BTA.

*Facts and procedural background*

{¶ 2} Buckeye Terminals acquired the property at issue in June 2011 as part of a bulk-asset purchase that included 32 other facilities across several states for a total price of $166 million. The property is improved with eight buildings, along with 22 fuel-storage tanks and other tangible personal property located on the real property (collectively, the "Columbus facility"). A schedule attached to the purchase agreement states that the fair market value of the Columbus facility, including both equipment and real-property interests, was $13,981,000.

{¶ 3} In June 2011, Buckeye Terminals filed a conveyance-fee statement with the Franklin County auditor, reporting $8,492,911 as the purchase price of the real property located in Columbus, and recorded a quitclaim deed for the property. The Franklin County auditor valued the subject real property at $1,825,700 for tax year 2011.

{¶ 4} In February 2012, appellee Board of Education of the South-Western City School District ("BOE") filed a complaint with the Franklin County Board of Revision ("BOR"), challenging the auditor's valuation and alleging that the June 2011 sale established a higher true value for the property. Based on the June 2011 deed and conveyance-fee statement, the BOE requested an increase of the property's value to $8,493,000.

{¶ 5} Shortly before the BOR held a hearing on the BOE's valuation complaint, Buckeye Terminals filed an amended deed and conveyance-fee statement, which altered Buckeye Terminals's allocation of the bulk-purchase price

to the Columbus real property from $8,492,911 to $1,921,084 "to correct purchase price erroneously noted on prior conveyance."

{¶ 6} At the BOR hearing in October 2014, the BOE offered no evidence other than the June 2011 conveyance-fee statement and deed in support of its complaint. Buckeye Terminals responded that the June 2011 conveyance-fee statement listed an incorrect sale price for the Columbus property because it erroneously included not just the value of the real estate but also the value of tangible personal property transferred as part of the Columbus facility. Buckeye Terminals submitted as evidence the amended conveyance-fee statement and deed and presented testimony from its property-tax manager, Flora Davis, and two employees of Ernst & Young, L.L.P.—Robert Stall and Mark Molepske—who were involved in Ernst & Young's allocation of the $166-million purchase price to the assets transferred in the June 2011 transaction.

{¶ 7} The BOR increased the value of the real property to $8,493,000 for tax years 2011, 2012, and 2013, but it retained the auditor's valuation of $1,825,700 for tax year 2014.

{¶ 8} Buckeye Terminals appealed the BOR's valuation increase for tax years 2011, 2012, and 2013 to the BTA. Buckeye Terminals again relied on the amended conveyance-fee statement and deed, but it also presented additional evidence to support the value reported on the amended conveyance-fee statement. Specifically, Louis J. Spisak III, a former employee of the Ohio Department of Taxation, and appraiser Ronald M. Eberly Jr. testified on Buckeye Terminals's behalf.

{¶ 9} The BTA affirmed the BOR's valuation of the real property for tax years 2011, 2012, and 2013, based on the original conveyance-fee statement and

deed.[1]  BTA No. 2014-4958, 2016 Ohio Tax LEXIS 484, *20-21 (Mar. 7, 2016). This appeal followed.

*Analysis*

**The BTA did not abuse its discretion by allowing supplementation of the transmitted record**

**{¶ 10}** Before turning to the merits of this appeal, we first consider Buckeye Terminals's argument that the BTA erred by allowing the BOE to supplement the record with the original conveyance-fee statement and deed, which were submitted to and considered by the BOR but which the BOR did not transmit as part of the record to the BTA.  We reject that argument.

**{¶ 11}** R.C. 5715.08 requires a county board of revision to preserve all documentary evidence offered in relation to a valuation complaint, and R.C. 5717.01 requires the board of revision to certify to the BTA a transcript of its record and all evidence offered in connection with a complaint when a notice of appeal is filed.  Here, the BOE submitted the original conveyance-fee statement and deed to the BOR.  The documents were part of the record, and the BOR was required to preserve and transmit them to the BTA.  Upon finding that the BOR failed to satisfy its statutory duties, the BTA properly allowed the BOE to supplement the transmitted record with copies of the original conveyance-fee statement and deed as part of the BTA's authority under R.C. 5717.01 to "make such investigation concerning the appeal as it deems proper."  *See Vandalia-Butler City Schools Bd. of Edn. v. Montgomery Cty. Bd. of Revision*, 130 Ohio St.3d 291, 2011-Ohio-5078, 958 N.E.2d 131, ¶ 27, fn. 4.  The BTA has discretion in admitting evidence, and unless the BTA abuses its discretion, we will affirm its decision.  *Orange City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 74 Ohio St.3d 415, 416-417, 659 N.E.2d 1223 (1996).

---

[1] The BOR rounded the $8,492,911 reported value up to $8,493,000, whereas the BTA rounded it down to $8,492,910.

**{¶ 12}** We reject Buckeye Terminals's argument that once the BTA hearing ended, the parties were bound by the record as it then existed. Contrary to Buckeye Terminals's assertion, *Columbus City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 90 Ohio St.3d 564, 740 N.E.2d 276 (2001), does not hold that a party may supplement the record only before the close of the BTA hearing, because there was no BTA hearing in that case, *see id.* at 566. And other cases that Buckeye Terminals cites are distinguishable because they involved attempts to introduce evidence that had not been submitted to the BOR. In *AP Hotels of Illinois, Inc. v. Franklin Cty. Bd. of Revision*, 118 Ohio St.3d 343, 2008-Ohio-2565, 889 N.E.2d 115, for example, we prohibited a party from introducing a document for the first time on appeal to this court, *id.* at ¶ 8, fn. 1; *see also Margaret Realty Co. v. Cuyahoga Cty. Bd. of Revision*, BTA No. 2014-1251, 2015 Ohio Tax LEXIS 2265, *3 (Apr. 28, 2015) (BTA rejected posthearing request to file supplemental evidence that had not been presented to the BOR). Those decisions do not address supplementation to remedy the BOR's failure to transmit a complete record of evidence. Buckeye Terminals also cites *Stevenson v. Ottawa Cty. Bd. of Revision*, BTA No. 2014-2857, 2015 Ohio Tax LEXIS 1334 (Mar. 5, 2015), which did involve the BOR's failure to transmit a complete record of evidence to the BTA, but in that case the parties waived a merit hearing before the BTA. Although the BTA stated that "it is the parties' duty to assure that the statutory transcript contains the evidence presented to the BOR," *id.* at *3, it also cited *Columbus City School Dist. Bd. of Edn.* at 566, which held that parties may not complain that a BOR transcript is incomplete if they waive the opportunity for a hearing before the BTA.

**{¶ 13}** We also reject Buckeye Terminals's argument that the original conveyance-fee statement and deed were inadmissible because the BOE did not offer certified copies or otherwise authenticate those documents. Buckeye Terminals forfeited this argument by not objecting to the documents at the BOR. *See Plain Local Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 130 Ohio

St.3d 230, 2011-Ohio-3362, 957 N.E.2d 268, ¶ 20.  Moreover, although Buckeye Terminals challenges the authenticity of the documents, it does not question their substance.  But for additional file stamps, the rerecorded deed, upon which Buckeye Terminals relies, is identical to the original deed, and Buckeye Terminals readily acknowledges the only material fact about the original conveyance-fee statement—that it reported a sale price of $8,492,911.  Under these circumstances, the BTA did not abuse its discretion by granting the BOE's motion to supplement the transmitted record with the original conveyance-fee statement and deed.

*We will reverse a valuation decision only if it is unreasonable or unlawful*

{¶ 14} In an appeal from a county board of revision's valuation decision, the BTA must determine the taxable value of the property at issue.  R.C. 5717.03(B).  The fair market value of property for tax purposes is a question of fact that is primarily within the province of the taxing authorities.  *Cuyahoga Cty. Bd. of Revision v. Fodor*, 15 Ohio St.2d 52, 239 N.E.2d 25 (1968), syllabus.  This court will not disturb a valuation decision of the BTA unless it affirmatively appears from the record that the decision is unreasonable or unlawful.  *Id.*  If we find that a BTA decision is unreasonable or unlawful, we may either reverse the decision or modify it and enter final judgment in accordance with that modification.  R.C. 5717.04.  We will not reverse the BTA's determination of evidentiary weight and credibility unless we conclude that the BTA abused its discretion.  *Bedford Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 132 Ohio St.3d 371, 2012-Ohio-2844, 972 N.E.2d 559, ¶ 17.

*The best evidence of true value after a bulk sale is the proper allocation of the bulk-purchase price to individual parcels*

{¶ 15} Real property must be taxed at its "true value in money."  Article XII, Section 2 of the Ohio Constitution; R.C. 5713.01(B).  The best evidence of true value is an actual, recent sale of the property in an arm's-length transaction.  *Terraza 8, L.L.C. v. Franklin Cty. Bd. of Revision*, __ Ohio St.3d __, 2017-Ohio-

4415, __ N.E.3d __, ¶ 33, citing *Conalco, Inc. v. Monroe Cty. Bd. of Revision*, 50 Ohio St.2d 129, 363 N.E.2d 722 (1977), paragraph one of the syllabus. The proponent of using a recent sale price to value real property "typically makes a prima facie case when it presents a recent conveyance-fee statement along with a deed to evidence the sale and the price." *FirstCal Indus. 2 Acquisitions, L.L.C. v. Franklin Cty. Bd. of Revision*, 125 Ohio St.3d 485, 2010-Ohio-1921, 929 N.E.2d 426, ¶ 23.

{¶ 16} This court has held that when real property "has been the subject of a recent arm's-length sale between a willing seller and a willing buyer, the sale price of the property shall be 'the true value for taxation purposes.' " *Berea City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 269, 2005-Ohio-4979, 834 N.E.2d 782, ¶ 13, quoting former R.C. 5713.03, Am.Sub.H.B. No. 260, 140 Ohio Laws, Part II, 2665, 2722. The General Assembly amended R.C. 5713.03 in 2012, however, and the statute now provides that the county auditor *may*, instead of *shall*, consider the sale price in a recent, arm's length sale to be the true value for taxation purposes. 2012 Am.Sub.H.B. No. 487 ("H.B. 487"). In *Terraza 8* at ¶ 30, we held that the H.B. 487 amendment to R.C. 5713.03 superseded *Berea* and that a recent arm's-length sale price is not conclusive evidence of true value under the amended statute. But although the revised statute may apply to tax year 2013, *see Terraza 8* at ¶ 22, the amendment does not affect our analysis in this case.

{¶ 17} In this case, the real property transferred as part of a larger sale of assets, real and personal, for a single purchase price—a type of sale that this court has referred to as a "bulk sale," *Sapina v. Cuyahoga Cty. Bd. of Revision*, 136 Ohio St.3d 188, 2013-Ohio-3028, 992 N.E.2d 1117, ¶ 21.

> Unlike a simpler transaction where a single parcel of real property
> is sold individually, a bulk sale may involve the sale of all the assets

of a business, whereby a parcel of real property constitutes one of many business assets sold at the same time for an aggregate sale price. Alternatively, a bulk sale may consist of a sale of numerous real estate parcels at an aggregate price as part of a single deal.

*St. Bernard Self-Storage, L.L.C. v. Hamilton Cty. Bd. of Revision*, 115 Ohio St.3d 365, 2007-Ohio-5249, 875 N.E.2d 85, ¶ 15. The sale here encompasses both scenarios. For a single price, Buckeye Terminals purchased real property, terminal facilities, pipeline systems, contracts, books, records, and inventory, located at 33 sites in multiple states. The Columbus facility encompassed both real property and tangible personal property.

{¶ 18} We have acknowledged the complications and difficulties that arise when valuing property that has been transferred as part of a bulk sale. A bulk sale differs from a single-parcel sale "because the issue of *proper allocation* stands between the stated sale price and its character as reflecting the value of any one particular parcel." (Emphasis added.) *FirstCal*, 125 Ohio St.3d 485, 2010-Ohio-1921, 929 N.E.2d 426, at ¶ 16. With a bulk sale, the best evidence of true value " 'is the proper allocation of the lump-sum purchase price' " to individual parcels. *Id.* at ¶ 17, quoting *Conalco*, 50 Ohio St.2d 129, 363 N.E.2d 722, at paragraph two of the syllabus. As opposed to a single-parcel sale, a bulk sale raises the additional question "whether the proffered allocation of bulk sale price to the particular parcel of real property is 'proper,' which is the same as asking whether the amount allocated reflects the true value of the parcel for tax purposes." *St. Bernard Self-Storage* at ¶ 15. If the BTA finds that an allocation is not proper, or that a proper allocation is not possible, then the allocated price does not determine the property's value. *Bedford Bd. of Edn.*, 132 Ohio St.3d 371, 2012-Ohio-2844, 927 N.E.2d 559, at ¶ 19; *see Dublin City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 80 Ohio St.3d 450, 454, 687 N.E.2d 422 (1997).

**{¶ 19}** This case raises questions about how a party shows the propriety of an allocated value and the evidentiary force afforded an allocated value reported on a conveyance-fee statement. The BOE argues that Buckeye Terminals's initial allocation of $8,492,911 on the June 2011 conveyance-fee statement is the best evidence of the property's value. Buckeye Terminals, on the other hand, argues that the originally reported allocation does not reflect the real property's true value, which it claims is accurately reflected on the amended conveyance-fee statement.

***Buckeye Terminals bears the burden of demonstrating that the value reported on its initial conveyance-fee statement does not reflect the property's true value***

**{¶ 20}** To properly evaluate the parties' positions, we first consider the applicable burdens of proof. A school board, as the proponent of using a reported sale price to value real property, makes a prima facie case when it submits basic documentation of the sale—the conveyance fee and deed. *FirstCal* at ¶ 23-24. The conveyance fee and deed create a rebuttable presumption that the sale met the requirements that characterize true value. *Id.* at ¶ 24, citing *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 78 Ohio St.3d 325, 327, 677 N.E.2d 1197 (1997).

**{¶ 21}** Because Buckeye Terminals opposes the use of the allocated value it reported on its June 2011 conveyance-fee statement, it bears the burden of demonstrating that the reported value does not properly reflect the true value of the parcel. *Id.* at ¶ 25, 28; *Bedford Bd. of Edn.*, 132 Ohio St.3d 371, 2012-Ohio-2844, 972 N.E.2d 559, at ¶ 21 (when a school board advocates using the allocated sale price reported on a conveyance-fee statement, "the burden of rebuttal rests on the owner because the owner is the party most likely to possess the information that could justify or refute the propriety of the allocation").

**{¶ 22}** Contrary to the BOE's argument, Buckeye Terminals's burden is not to show that it made a mistake in allocating the bulk-purchase price or in completing the June 2011 conveyance-fee statement; Buckeye Terminals's burden

is to show that the amount reported on the initial conveyance-fee statement does not reflect the true value of the property. *See Heimerl v. Lindley*, 63 Ohio St.2d 309, 312-313, 408 N.E.2d 685 (1980) (allocated value was not a reasonable reflection of true value when allocation was intended to maximize federal income-tax advantage). When the allocated amount is improper, i.e., does not accurately reflect the true value of the property, the BTA must review and weigh all competent evidence in the record in order to determine the property's true value. *See Consol. Aluminum Corp. v. Monroe Cty. Bd. of Revision*, 66 Ohio St.2d 410, 414, 423 N.E.2d 75 (1981), citing *Conalco, Inc. v. Monroe Cty. Bd. of Revision*, 54 Ohio St.2d 330, 376 N.E.2d 959 (1978) (once BTA determined that allocation resulted in a distorted valuation of the property, it should have received all competent evidence to determine the property's true value); *see also Dublin City School Dist. Bd. of Edn.*, 80 Ohio St.3d 450, 687 N.E.2d 422.

{¶ 23} When confronted with clear evidence that negates the auditor's valuation, it is unreasonable and unlawful for the BTA to adopt the auditor's valuation rather than to determine the property's value based on the record evidence. *Musto v. Lorain Cty. Bd. of Revision*, 148 Ohio St.3d 456, 2016-Ohio-8058, 71 N.E.3d 279, ¶ 35, citing *Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 139 Ohio St.3d 193, 2013-Ohio-4543, 11 N.E.3d 206, ¶ 26. The same rationale applies when clear evidence negates an allocation reported on a conveyance-fee statement.

{¶ 24} Buckeye Terminals's burden of demonstrating that the allocated amount reported on the June 2011 conveyance-fee statement does not reflect the real property's true value is independent of its burden of submitting corroborating evidence to support the allocation reported on the amended conveyance-fee statement. *Bedford Bd. of Edn.*, 132 Ohio St.3d 371, 2012-Ohio-2844, 972 N.E.2d 559, at ¶ 22. The latter burden, which consists of showing " 'corroborating indicia to ensure that the allocation reflects the true value of the property,' " *id.* at ¶ 20,

quoting *St. Bernard Self-Storage*, 115 Ohio St.3d 365, 2007-Ohio-5249, 875 N.E.2d 85, at ¶ 17, arises only if Buckeye Terminals first demonstrates that the originally reported value does not reflect the property's true value.

### *The BTA did not consider whether Buckeye Terminals established that the initially reported value was not an accurate reflection of the parcel's value*

{¶ 25} The BTA did not consider whether Buckeye Terminals satisfied its burden of demonstrating that the $8,492,911 allocation reported in the June 2011 conveyance-fee statement was an inaccurate reflection of the real property's true value. Rather, after citing two BTA cases that each involved conflicting conveyance-fee statements, the BTA immediately leapt to "question[ing] the veracity of the amended conveyance fee statement." 2016 Ohio Tax LEXIS 484 at *14.

{¶ 26} The BTA acknowledged that it would be appropriate to review other evidence, including independent appraisals, concerning the property's value if the allocated purchase price did not reflect the true value of the subject real property. But the BTA relied solely on the original conveyance-fee statement as the best indication of the property's true value, without independently determining whether Buckeye Terminals had demonstrated that the reported value did not accurately reflect the property's true value. In this regard, we conclude that the BTA's decision was unreasonable and unlawful.

### *Buckeye Terminals's evidence establishes that $8,492,911 does not reflect the property's true value*

{¶ 27} Buckeye Terminals argues that the testimony of its property-tax manager, Flora Davis, established that the allocated value reported on the June 2011 conveyance-fee statement was an incorrect statement of the real property's value. Davis testified that Buckeye Terminals first realized that there was an issue regarding the value reported on the June 2011 conveyance-fee statement when it received the BOE's valuation complaint. Buckeye Terminals then researched the

origin of the reported value, reviewed the source documentation, and determined that it was based on "bad data." Davis relied on a four-page spreadsheet, which she described as a schedule of all the property included in the bulk sale, prepared by her predecessor. She testified that a Buckeye Terminals employee prepared the spreadsheet, that Buckeye Terminals kept the spreadsheet in the ordinary course of its business, and that she was the custodian of the record.

{¶ 28} Davis focused on the first three lines on the spreadsheet's third page, each of which relates to property located in Franklin County. The sum of the values listed on those three lines, under the column heading "[a]llocation of purchase price," is $8,492,911—the value that Buckeye Terminals reported on the original conveyance-fee statement. But Davis testified that only the value stated on the third line—$3,016,041—is attributable to the real property at issue. The tax identification number on the third line is identical to the parcel number listed on the deeds and property-record card for the subject property. Davis stated that the value stated on the first line—$116,107—relates to real property that was not part of the bulk sale. And based on the tax identification number assigned to the second line, Davis testified that the value stated on that line—$5,360,763—relates to tangible personal property, not real estate.

{¶ 29} The BTA found the spreadsheet "to be unreliable hearsay and not competent and probative evidence of the subject real property's value." 2016 Ohio Tax LEXIS 484 at *18. And it stated that Davis's testimony was not "particularly helpful" because Davis, who began working for Buckeye Terminals in November 2011, several months after the bulk sale, did not have firsthand knowledge of the transaction. *Id.* at *15.

{¶ 30} Buckeye Terminals argued that the spreadsheet was not hearsay because it qualified as a business record under Evid.R. 803(6). Davis need not have firsthand knowledge of the underlying transaction to lay the foundation for the spreadsheet as a business record. *See State Farm Mut. Auto. Ins. Co. v. Anders*,

197 Ohio App.3d 22, 2012-Ohio-824, 965 N.E.2d 1056, ¶ 15-16 (10th Dist.) (holding that Evid.R. 803(6) does not require a witness to have personal knowledge of the exact circumstances of the production of the document or firsthand knowledge of the transaction giving rise to the record). Although Davis did not provide great detail concerning the creation of the spreadsheet, her testimony provided an adequate foundation for its admissibility as a business record. And Davis, as Buckeye Terminals's property-tax manager, was competent to testify that a tax identification number listed on the spreadsheet indicated that the property to which it applied was personal property and not real estate, despite her lack of involvement in the bulk-sale transaction.

{¶ 31} The BOE argues that the BTA appropriately refused to admit the spreadsheet as a business record because the BTA found the document to be untrustworthy. Evid.R. 803(6) states that even when a document constitutes a business record, a court may exclude it if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." The BTA did not, however, determine that the source of information or the method or circumstances of the spreadsheet's preparation indicated untrustworthiness. Rather, it found the spreadsheet untrustworthy because the value that Davis connected to the subject property conflicted with other evidence regarding the property's value. 2016 Ohio Tax LEXIS 484 at *17. That conflict, however, goes to the weight of the evidence, not its admissibility as a business record.

{¶ 32} Although the record contains conflicting evidence about the property's actual value, the spreadsheet, coupled with Davis's testimony, constitutes credible evidence that the value reported on the June 2011 conveyance-fee statement did *not* reflect the value of the subject real property. The spreadsheet demonstrates the origin of the $8,492,911 value, and it also assigns an allocated value of $3,016,041 to the parcel number of the subject real property. Davis testified that based on its tax identification number, the second value, $5,360,763,

relates exclusively to tangible personal property and that it was erroneously included in the reported value for the real property. The evidentiary conflicts may impugn the spreadsheet's reliability as evidence of the real property's true value, but they do not impugn its validity for purposes of demonstrating that the value was less than $8,492,911. For these reasons, we conclude that the BTA abused its discretion in rejecting the spreadsheet and Davis's testimony.

{¶ 33} At the BTA hearing, as further evidence that the allocation reported on the 2011 conveyance-fee statement was incorrect, appraiser Ronald M. Eberly Jr. testified consistently with his appraisal report that the value of the subject real property was $1,445,000 as of January 1, 2011. The BOE objected to Eberly's testimony solely on the basis of relevance, arguing that appraisal testimony cannot be used to rebut a sale, and the BTA held that the recent, arm's-length transaction obviated the need to evaluate Eberly's appraisal report.

{¶ 34} In support of its argument regarding Eberly's appraisal testimony, the BOE cites *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 146 Ohio St.3d 470, 2016-Ohio-757, 58 N.E.3d 1126, and *HIN, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 138 Ohio St.3d 223, 2014-Ohio-523, 5 N.E.3d 637, both of which involved the application of former R.C. 5713.03.[2] In *Columbus City Schools* at ¶ 20, this court stated, "[T]he mere fact that an expert has opined a different value should not be deemed sufficient to undermine the validity of the sale price as the property value." We explained, however, that specific information regarding the recency, arm's-length character or voluntariness of a sale may be introduced through an appraiser's report to rebut the presumption that the sale price represents a property's true value. And in *HIN* at ¶ 17, we rejected the use of appraisal

---

[2] The BOE actually cites *HIN, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 124 Ohio St.3d 481, 2010-Ohio-687, 923 N.E.2d 1144, but the pinpoint citation and the context of the argument strongly suggest that the BOE intends to rely on *HIN, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 138 Ohio St.3d 223, 2014-Ohio-523, 5 N.E.3d 637, instead.

14

testimony to overcome a sale except in cases in which the sale was not recent or was not at arm's length. But each of those cases involved the sale of a single property for an undisputed sale price. Neither *Columbus City Schools* nor *HIN* precludes the use of appraisal testimony to demonstrate that an allocation of a bulk-sale price is improper because it does not reflect the true value of the property.

**{¶ 35}** Under these circumstances, we conclude that the BTA abused its discretion by rejecting Eberly's testimony and appraisal report as evidence that the allocation reported on the June 2011 conveyance-fee statement did not accurately reflect the property's true value. *See Hilliard City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 128 Ohio St.3d 565, 2011-Ohio-2258, 949 N.E.2d 1 (using appraisal evidence to reduce the bulk-sale price reported on the conveyance-fee statement). In *Conalco*, 50 Ohio St.2d at 130, 363 N.E.2d 722, this court held that the BTA acted unreasonably and unlawfully when it based its rejection of a property owner's complaint for a reduction in value solely on an appraisal that ignored a contemporaneous sale. We stated that "the best evidence of 'true value in money' is the proper allocation of the lump-sum purchase price and not an appraisal ignoring the contemporaneous sale." *Id.* at paragraph two of the syllabus. But unlike in *Conalco*, in which the property owner premised its request for relief upon its allocation, Buckeye Terminals asserts that its allocation was erroneous. In *Conalco*, we emphasized the BTA's obligation to determine whether the allocation resulted in a "distorted valuation" of the real property and, if so, to make a finding of value based on the totality of the evidence adduced. *Id.* at 131; *Consol. Aluminum Corp.*, 66 Ohio St.2d at 414, 423 N.E.2d 75. When, as here, the property owner contends that its reported allocation was erroneous, the BTA is required to determine the propriety of the allocation based on the totality of the evidence, which here includes Eberly's appraisal testimony.

**{¶ 36}** The BTA failed to consider whether Buckeye Terminals met its burden of proving that the value reported on the June 2011 conveyance-fee

statement was not indicative of the property's true value. That is a separate inquiry from whether Buckeye Terminals demonstrated that the property's true value was $1.92 million, as reported on the amended conveyance-fee statement. The BTA erroneously focused on "which conveyance fee statement accurately memorialized the price at which the subject real property transferred." 2016 Ohio Tax LEXIS 484 at *12. Because it "question[ed] the veracity of the amended conveyance fee statement," *id.* at *14, the BTA blindly relied on the June 2011 conveyance-fee statement, despite the competent and probative evidence negating that value. We therefore conclude that the BTA acted unreasonably and unlawfully in adopting $8,492,910 as the value of the real property. Once Buckeye Terminals demonstrated that the originally reported allocated value did not accurately reflect the value of the real property, the BTA was required to determine the true value based on the evidence in the record. *See Dublin City Schools Bd. of Edn.*, 139 Ohio St.3d 193, 2013-Ohio-4543, 11 N.E.3d 206, at ¶ 26.

## *The BTA acted unreasonably and unlawfully by not independently determining the real property's true value*

{¶ 37} When we reverse a BTA valuation, we may either remand the matter to the BTA or enter final judgment. R.C. 5717.04. Buckeye Terminals urged the BTA to accept $1,921,084, as reported on the amended conveyance-fee statement, as the property's true value. To be entitled to that relief, Buckeye Terminals bore the burden, as the proponent of the allocated value reported on the amended conveyance-fee statement, of presenting evidence corroborating the $1,921,084 value. *See Bedford Bd. of Edn.*, 132 Ohio St.3d 371, 2012-Ohio-2844, 972 N.E.2d 559, at ¶ 21. Buckeye Terminals submitted certified copies of the amended conveyance-fee statement and deed, as well as testimony of Ernst & Young employees Robert Stall and Mark Molepske and appraiser Ronald Eberly. But the BTA rejected the evidence in support of the amended value based on the witnesses' lack of firsthand knowledge of the bulk-sale transaction and because it found the

16

documentary evidence not "competent and probative." 2016 Ohio Tax LEXIS 484 at *14-15.

{¶ 38} Buckeye Terminals engaged Ernst & Young to allocate the bulk-purchase price among the assets it acquired in the bulk sale for financial-reporting purposes. That process involved Ernst & Young's determining the fair value of all the assets acquired by Buckeye Terminals, guided by generally accepted valuation principles. Molepske, who primarily performed the valuation of the real-property component of the bulk-sale assets, explained that he used the sales-comparison approach to value the real property, using Ohio industrial-land sales as comparable sales. Ernst & Young determined that the land value of the Columbus facility was $1,295,000. Stall testified that the value of the real-property component of the Columbus facility, including the land, buildings, and site improvements, was $1,921,084 as of the date of the bulk sale.

{¶ 39} As with Davis's testimony, the BTA found Stall's and Molepske's testimony not "particularly helpful" because they did not have firsthand knowledge of the bulk-sale transaction and became involved only after the sale. *Id.* at *15. Ernst & Young valued the assets and liabilities acquired in the bulk sale, as of the date of the sale; the fact that Ernst & Young was not involved in the negotiations of the purchase contract, and instead became involved shortly thereafter, does not undermine Ernst & Young's valuations. *See Dublin City School Dist. Bd. of Edn.*, 80 Ohio St.3d at 451, 687 N.E.2d 422 (noting BTA's reliance on testimony about allocation strategy despite witness's lack of personal knowledge of underlying negotiations). Stall and Molepske were personally involved in the valuation of the assets transferred in the bulk sale and in the allocation of the purchase price among those assets. The BTA abused its discretion in rejecting Stall's and Molepske's testimony based on their lack of involvement prior to consummation of the bulk sale.

**{¶ 40}** At the BTA hearing, Buckeye Terminals also presented testimony from Louis J. Spisak III, a former longtime employee of the Ohio Department of Taxation, whose duties included determining what is and what is not personal property and valuing personal property. Spisak, who had toured the subject real property in 2015, opined as to what property depicted in photographs of the Columbus facility constituted real property and what constituted personal property.

**{¶ 41}** The BTA sustained the BOE's objections to Exhibits 4 and 5, about which Spisak testified. 2016 Ohio Tax LEXIS 484 at *9. Exhibit 4—an undated and unattributed spreadsheet—is, according to Spisak, a list of the fixed assets located at the Columbus facility, prepared as part of Ernst & Young's valuation analysis. Buckeye Terminals's attorney stated that Exhibit 4 is Spisak's "summary" of the Ernst & Young report, and not part of the Ernst & Young report itself, but Spisak stated that Exhibit 4 "is actually part of a spreadsheet that [he] *received* from the client," and he identified its author as Ernst & Young. (Emphasis added.) Spisak identified Exhibit 5 as a portion of Ernst & Young's report that related to the Columbus facility. The data in Exhibit 4 is identical to data on the first page of Exhibit 5, although the spreadsheet in Exhibit 5 has additional columns. Spisak testified, based on Exhibit 4, that the value Ernst & Young assigned to the Columbus real property was $1,921,000. But the BTA excluded Exhibits 4 and 5 as "unreliable hearsay." *Id.*

**{¶ 42}** The BTA did not abuse its discretion in excluding Exhibits 4 and 5. Nor did the BTA abuse its discretion in excluding as inadmissible hearsay those portions of Spisak's testimony related to the bulk sale, including the allocations between personal and real property. Unlike Stall and Molepske, Spisak did not independently value the property transferred as part of the bulk sale. Spisak had no personal knowledge of what assets were transferred, he did not inventory the property, and he had no personal knowledge of any change in conditions between the date of the sale and the date of his inspection, four years later. Had the BTA

admitted Exhibits 4 and 5, Spisak may have been qualified to testify as to whether the property listed on those exhibits was personal property or real property, but without those exhibits, Spisak's testimony about the value of the real-property components transferred in the bulk sale is inadmissible hearsay that the BTA properly excluded.

{¶ 43} Although Stall's and Molepske's testimony supports the value reported on the amended conveyance-fee statement, the record before the BTA also included contradictory valuations. Eberly, for example, testified that the value of the subject real property was $1,445,000 as of January 1, 2011. And the spreadsheet that Davis relied on suggests a value of $3,016,041. We also note that although the 2014 valuation is not before this court, the record contains no explanation why the BOR retained the auditor's 2011 valuation of $1,825,700 for tax year 2014 despite ascribing a value nearly five times greater for the three intervening years. In light of the conflicting evidence regarding the true value of the real property, the BTA was required to independently determine the property's true value. Its failure to do so is unreasonable and unlawful.

*Conclusion*

{¶ 44} The BTA's decision to retain the BOR's valuation for tax years 2011 through 2013, based solely on the June 2011 conveyance-fee statement, was unreasonable and unlawful. Accordingly, we reverse the BTA's decision. But although the record contains evidence corroborating the $1,921,084 allocated value reported on Buckeye Terminals's amended conveyance-fee statement, it also contains contradictory evidence suggesting different values. Because the BTA did not independently determine the value of the property, and instead erroneously relied solely on the original conveyance-fee statement, we remand this matter to the BTA to determine the true value of the real property for tax years 2011 through 2013.

Decision reversed

and cause remanded.

O'CONNOR, C.J., and KENNEDY, O'NEILL, FISCHER, and DEWINE, JJ., concur.

O'DONNELL, J., dissents.

_____

Vorys, Sater, Seymour and Pease, L.L.P., Nicholas M.J. Ray, and Steven L. Smiseck, for appellant.

Rich & Gillis Law Group, L.L.C., Mark Gillis, and Kimberly G. Allison, for appellee Board of Education of the South-Western City School District.

_____