[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision,* Slip Opinion No. 2020-Ohio-353.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-353

COLUMBUS CITY SCHOOLS BOARD OF EDUCATION, APPELLEE, *v.* FRANKLIN COUNTY BOARD OF REVISION ET AL., APPELLEES; PALMER HOUSE BORROWER, L.L.C., APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision,* Slip Opinion No. 2020-Ohio-353.]**

*Taxation—Real-property valuation—Contract price for sale of limited-liability company constituted best evidence of value of real estate owned by the company—Decision of Board of Tax Appeals affirmed.*

(No. 2018-1299—Submitted September 10, 2019—Decided February 6, 2020.)

APPEAL from the Board of Tax Appeals, No. 2016-2365.

————————————

**DONNELLY, J.**

{¶ 1} This property-tax appeal challenges the determination by the Board of Tax Appeals ("BTA") of the tax-year-2015 value of an apartment complex located in Franklin County.  The principal question in this case is whether the BTA

erred by deciding that the sale price paid for the transfer of ownership of a corporate entity, appellant, Palmer House Borrower, L.L.C., should be presumed to constitute the value of the real estate owned by that entity. (Several entities referred to in this case have "Palmer" in their names; for convenience, we will refer to appellant as "Palmer" or, when necessary, as "Palmer House Borrower.") In addition to the substantive issue, Palmer contends that the BTA should not have admitted and relied upon the submitted evidence of the transfer and sale, because the documents were not properly authenticated and because they constituted inadmissible hearsay.

{¶ 2} For the reasons that follow, we affirm the decision of the BTA.

## I. BACKGROUND

{¶ 3} Palmer's 264-unit apartment complex in New Albany, constructed in 2013, was originally valued at $16,000,000 for tax year 2015. Before appellee the Franklin County Board of Revision ("BOR"), appellee the Columbus City Schools Board of Education ("school board") argued for an increase based on a recorded mortgage that secured a loan amount of $25,536,000. The school board inferred a sale price of $34,000,000 by applying a loan-to-value ratio. The BOR rejected this argument and the school board appealed to the BTA.

{¶ 4} At the BTA, the school board argued that a sale of the real estate was effectuated by a transfer of ownership of Palmer. Palmer objected to the admission of various documents introduced by the school board and argued that the sale of the entity was not equivalent to a sale of the real estate.

### A. Description of the evidence

{¶ 5} The school board presented evidence at the BTA relating to (1) the conveyance of the real estate, (2) a loan secured by a mortgage on the real estate, (3) the sale of the apartment complex (including both real estate and appurtenant personal property), and (4) the real-estate appraisals.

### 1. Conveyance of the real estate

{¶ 6} A deed executed October 6, 2015, and recorded October 8, 2015, reflects the conveyance of the real estate from an entity called Palmer Square, L.L.C., to appellant Palmer House Borrower, L.L.C. A contemporaneously filed form declares the transaction exempt from the conveyance fee because the property was not transferred for valuable consideration. *See* R.C. 319.54(G)(3)(m). The supporting affidavit, notarized on October 5, 2015, explained that "[t]he conveyance of the Real Property constitutes a capital contribution to the Grantee limited liability company."

### 2. Loan secured by a mortgage

{¶ 7} The school board introduced a mortgage instrument, notarized and recorded in December 2014, evidencing a secured loan of $25,536,000 to Palmer Square, and a document showing the later assumption of the mortgage obligation by appellant Palmer House Borrower, effective October 6, 2015, the same day the real estate was transferred from Palmer Square to Palmer House Borrower.

### 3. Sale of the apartment complex

{¶ 8} In a signed "Purchase and Sale Agreement" dated June 22, 2015, Palmer Square agreed to sell the subject real estate to PPG Manhattan Real Estate Partners, L.L.C., for $35,000,000. The price encompassed items of personal property, both tangible (e.g., clubhouse furnishings and recreational amenities) and intangible (e.g., the "Palmer House" name), all of which related to the business of renting apartments. Subsequently, through a formal amendment to the purchase agreement, the parties changed the sale price to $35,250,000.

{¶ 9} Article 15 of the purchase agreement gave the purchaser the option to structure the sale as a "Drop Down LLC sale." The first amended purchase agreement encompassed the purchaser's decision to exercise that option. Under the option, the purchaser would give notice to the seller, then organize a limited-liability company ("L.L.C.") in Delaware with the seller as the sole owner.

Thereafter, the seller would convey the property to the L.L.C. in accordance with a prescribed form of warranty deed. Next, the agreement provided:

> [I]n lieu of Seller selling to Purchaser, and Purchaser purchasing from Seller, the Property, as contemplated in this Agreement, (i) Seller shall sell, and Purchaser shall purchase, all of the membership interests of the Drop Down LLC from Seller at Closing (the "**Drop Down LLC Sale**"), and (ii) in addition, Seller shall execute and deliver at Closing to Purchaser an assignment of all the membership interests in the Drop Down LLC.

(Boldface sic.) In an amendment to the purchase agreement, the parties acknowledged the purchaser's preference to consummate the transaction pursuant to the "Drop Down L.L.C." provision and the purchaser obtained an option to terminate the agreement if the lender would not approve the entity transfer in connection with the purchaser's assumption of the loan obligation.

{¶ 10} The school board also introduced a "Final Settlement Statement" on a real-estate title agency's form, which was dated October 6, 2015, and signed by the parties. On that statement, the "transaction type" is specified as "purchase of membership interest in Palmer House Borrower, LLC"; the seller is Preferred Real Estate Investments, L.L.C., and the buyer is Palmer House Owner, L.L.C. The statement corroborates a sale price of $35,250,000 and establishes the closing date as October 6, 2015, the same day that the subject real estate was transferred to Palmer House Borrower and Palmer House Borrower assumed the existing mortgage on the property.

### 4. Real-estate appraisals

{¶ 11} The school board introduced the financing appraisal prepared in connection with the mortgage loan and offered the testimony of the appraiser,

4

Matthew Bilger, to authenticate it. Bilger's appraisal opines an "as-is market value" of $36,500,000 as of October 23, 2014, and a "prospective value upon stabilization" as of May 1, 2015, of $36,600,000. Palmer objected to the admission of the appraisal and testimony, arguing that Bilger's value opinion was not expressed "as of" the tax-lien date, January 1, 2015, and that the value opinion lacked relevance for tax-valuation purposes because the appraisal had been prepared for financing purposes. Palmer also contends that Bilger made a particular error in relation to the impact of property taxes on the property's value.

{¶ 12} Palmer presented the appraisal report and testimony of Robert J. Weiler, a real-estate expert and member of the Appraisal Institute. Weiler used three valuation approaches—cost, income-capitalization, and sales-comparison—which all generated a similar value. Giving the most weight to the income-capitalization method and taking into account the personal property that would transfer in a sale, Weiler estimated a real-estate market value of $25,000,000 as of the January 1, 2015 tax-lien date. In appraising the property, Weiler noted the $0 transfer of the property from Palmer Square to Palmer House Borrower, but did not take into account the sale price of the entity, Palmer House Borrower.

{¶ 13} Finally, in an attempt to rebut Weiler's appraisal, the school board offered testimony in the nature of an "appraisal review" by Thomas Sprout, a member of the Appraisal Institute. Sprout identified several aspects of Weiler's appraisal that he viewed as defects.

**B. The BTA decision, the appeal to the court of appeals, and the transfer to this court**

{¶ 14} After overruling Palmer's objections to the admission of the sale and conveyance documents, the BTA relied on the documents to determine the real-estate value based on the following findings:

- The "transaction [by which Palmer House Borrower's ownership interest was transferred] was effectively the sale of real estate structured using the 'Drop Down LLC Option' provided in the purchase agreement";

- "The purchase agreement * * * reflects the intent to engage in a real estate transaction";

- The personal property in the present transaction "is consistent with the tangible personal property that would ordinarily be included in the sale of similar real property";

- Therefore, "the BOE has met its initial burden to show that there was a qualifying sale of the subject real property."

BTA No. 2016-2365, 2018 Ohio Tax LEXIS 1574, *7-9 (July 25, 2018). Having determined that an arm's-length sale had occurred in this case, the BTA rejected Weiler's appraisal, finding that Palmer had not rebutted the presumption that the sale price established the value of the property. *Id*. at *10.

{¶ 15} Accordingly, the BTA took the total sale price of $35,250,000 as the starting point and then deducted the value of the personal property that transferred in the sale. Relying on Weiler's appraisal to determine the personal-property value, the BTA computed a $792,000 deduction for personal property and arrived at a final real-estate value of $34,458,000.

{¶ 16} Palmer appealed, then petitioned for transfer of its appeal from the court of appeals to this court. On November 28, 2018, we granted the transfer.

## II. PALMER'S PROPOSITIONS OF LAW

{¶ 17} Palmer advances five propositions of law as follows:

1.      The BTA erred when it determined that the purchase of the membership interest was the best indication of value for tax purposes.

2.     The BTA applied the wrong burden of proof because the conveyance fee form and deed did not establish value.

3.     The BTA decision is unreasonable and unlawful because the BTA relied upon documentation presented by the Board of Education that was not admissible because it was not authenticated or certified.

4.     The only probative and competent evidence of value was the appraisal presented on behalf of Palmer House [Borrower]. The BTA should have adopted the appraisal as the best indication of value for the real estate as of tax lien date.

5.     The BTA's decision is inconsistent with the Ohio Constitution and results in an unfair and inequitable valuation for the real estate.

## III.  ANALYSIS

### A.  The BTA reasonably considered the sale and conveyance documentation

{¶ 18} Because the BTA's substantive decision depends on its consideration of evidence over Palmer's objections, we turn first to Palmer's third proposition of law.  Palmer contends that the BTA should not have considered the purchase agreement, the settlement statement, or the conveyance documents in making its determination because they were not properly authenticated and because they constituted hearsay.

{¶ 19} As a general matter, "[w]e defer to the BTA's determination of the *competency* as well as to [its] determination of the *credibility* of the evidence presented to it."  (Emphasis sic.)  *Steak 'n Shake, Inc. v. Warren Cty. Bd. of Revision*, 145 Ohio St.3d 244, 2015-Ohio-4836, 48 N.E.3d 535, ¶ 20.  Moreover, because the BTA is an administrative agency rather than a court, the Rules of Evidence are not binding at the BTA, though they may be used for guidance.

*HealthSouth Corp. v. Testa*, 132 Ohio St.3d 55, 2012-Ohio-1871, 969 N.E.2d 232, ¶ 13. Accordingly, our conclusions here pertain to administrative proceedings and are not necessarily definitive of how the Rules of Evidence might apply in a court. Finally, although Palmer formally objects to the admission of the documents, it "does not question their substance," a point that is significant in evaluating the reasonableness of the BTA's treatment of the evidence. *Buckeye Terminals, L.L.C. v. Franklin Cty. Bd. Of Revision*, 152 Ohio St.3d 86, 2017-Ohio-7664, 93 N.E.3d 914, ¶ 13.

### 1. The sale documentation was sufficiently authenticated

{¶ 20} Generally, authentication requires "evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). Evid.R. 901(B)(4) permits consideration of "[d]istinctive characteristics and the like," such as "[a]ppearance, contents, [and] substance[,] taken in conjunction with circumstances" of the case.

{¶ 21} The "Purchase and Sale Agreement" is dated June 22, 2015, and was signed by both Palmer Square as the seller and PPG Manhattan as the purchaser. In addition to the fact that the cover page of the document notes the property's address, the purchase agreement was obtained in discovery by the school board through a document request that specifically asked for a "[f]ull and complete copy of the purchase contract or other document evidencing the sale or transfer of the subject property to Palmer House Borrower, LLC." Similarly, the settlement statement identifies itself as such, is signed and dated October 6, 2015, and sets forth the same street address for the property as the purchase agreement. It specifies the "transaction type" as "purchase of membership interest in Palmer House Borrower, LLC" and names the seller as "Preferred Real Estate Investments LLC," which is an entity that signed the purchase agreement as a contractor and affiliate of the seller Palmer Square. Like the purchase agreement, the settlement statement

was produced in discovery by Palmer pursuant to a specific request seeking "all closing statements and other documents executed at said closing."

{¶ 22} The school board emphasizes that Palmer itself produced the documents in discovery and asserts that that is a sufficient reason for regarding the documents as being what they facially purport to be. We agree. Indeed, "[i]mplied authentication by production in discovery"[1] has been recognized as satisfying the requirement of Evid.R. 901—particularly when, as in this case, the documents are produced in response to a specifically tailored discovery request. *Stumppf v. Harris*, 2015-Ohio-1329, 31 N.E.3d 164, ¶ 32-34 (2d Dist.); *Nau v. Stonebridge Operating Co.*, 7th Dist. Noble No. 19 NO 0466, 2019-Ohio-3647, ¶ 39.

*2. Public-record documents may be found to be authentic*
*based on their characteristics*

{¶ 23} Palmer faults reliance on the conveyance-fee-exemption form and the deed that the school board obtained from the public record because the school board did not present certified copies pursuant to Evid.R. 902(4).[2] We reject Palmer's argument because documents that are not self-authenticating under Evid.R. 902 may still qualify as sufficiently authentic pursuant to Evid.R. 901. *See State v. Shearer*, 11th Dist. Portage No. 93-P-0052, 1994 WL 587769, *5 (Sept. 30, 1994) ("The conclusion that the documents are not self-authenticating [through official certification], however, does not preclude admissibility under the auspices of Evid.R. 901"). Under Evid.R. 901(B)(4), the conveyance-fee-exemption form and the deed identify themselves as what they purport to be.

{¶ 24} The conveyance-fee-exemption form has a notarized affidavit attached, and the accompanying deed bears stamps showing the auditor's

---

1. At the BTA hearing, Palmer's counsel indicated that the settlement statement and the purchase agreement had been produced by Palmer in discovery.

2. An uncertified copy of the same deed is attached as an appendix to Weiler's appraisal report. Palmer objects to the deed as a school-board exhibit but not as part of one of its own exhibits.

acceptance of fee-exempt status and the receipt of the deed by the county recorder. *See* Evid.R. 901(B)(7) (permitting authentication of "a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office" by "evidence that [the] writing * * * is from the public office where items of this nature are kept"). Moreover, the notarization of the deed and the affidavit supporting the conveyance-fee-exemption form supports their authenticity. *See* Evid.R. 902(8) (including notarized documents in a list of items that are generally self-authenticating).

### 3. *The hearsay rule does not bar admissibility of the documents*

{¶ 25} Palmer's general hearsay objection does not apply to the purchase agreement, because the agreement is offered as the written instrument that, if accepted as authentic, constitutes the best evidence of the contract between the parties. *See JLJ Inc. v. Rankin & Houser, Inc.*, 2d Dist. Montgomery No. 23685, 2010-Ohio-3912, ¶ 41 ("The contract * * * was not hearsay, but was documentary evidence * * *").

{¶ 26} As for the settlement statement, it is hearsay with respect to specific matters contained in the document. Nevertheless, the BTA did not err by considering the settlement statement because as an administrative tribunal, it is "permitted to rely on hearsay" as a general matter. *HealthSouth*, 132 Ohio St.3d 55, 2012-Ohio-1871, 969 N.E.2d 232, at ¶ 13. Moreover, once the BTA deemed the settlement statement to be authentic, reliance on it was appropriate because the statement constitutes a document generated in the ordinary course of business transactions to reflect the nature of those transactions. *See id.* at ¶ 20.

{¶ 27} We reject Palmer's third proposition of law.

### B. The BTA reasonably determined that the transaction at issue was, in substance, a sale of the real estate

{¶ 28} R.C. 5713.03 requires county auditors to "determine, as nearly as practicable, the true value of the fee simple estate, as if unencumbered * * *," of

real property.  In so doing, if the property "has been the subject of an arm's length sale between a willing seller and a willing buyer within a reasonable length of time, * * * the auditor may consider the sale price * * * to be the true value for taxation purposes."  *Id.*

{¶ 29} Under the statute, we have held that " 'the best evidence of the "true value in money" of real property is an actual, recent sale of the property in an arm's-length transaction.' "  *Terraza 8, L.L.C. v. Franklin Cty. Bd. of Revision*, 150 Ohio St.3d 527, 2017-Ohio-4415, 83 N.E.3d 916, ¶ 33, quoting *Conalco, Inc. v. Monroe Cty. Bd. of Revision*, 50 Ohio St.2d 129, 363 N.E.2d 722 (1977), paragraph one of the syllabus, quoting R.C. 5713.01.  We have characterized this "best evidence" principle as a rebuttable presumption that the sale price constitutes the value of the property.  *Westerville City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 154 Ohio St.3d 308, 2018-Ohio-3855, 114 N.E.3d 162, ¶ 10-11.  In addition, we have recognized a companion presumption that "a submitted sale price 'has met all the requirements that characterize true value,' " subject to rebuttal by proof that the sale was not at arm's length or not recent.  *Terraza 8* at ¶ 32, quoting *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 78 Ohio St.3d 325, 327, 677 N.E.2d 1197 (1997); *Dauch v. Erie Cty. Bd. of Revision*, 149 Ohio St.3d 691, 2017-Ohio-1412, 77 N.E.3d 943, ¶ 16 (presuming proffered sale to be an arm's-length sale); *Akron City School Dist. Bd. of Edn. v. Summit Cty. Bd. of Revision*, 139 Ohio St.3d 92, 2014-Ohio-1588, 9 N.E.3d 1004, ¶ 10, 22 (discussing applicability of the presumption that a sale is recent).  We will refer to these presumptions, working together, as "the sale-price presumption."

{¶ 30} The main issue we confront in this appeal is whether the sale-price presumption applies to the contract price set forth in the amended purchase agreement: $35,250,000.  By presenting the contract price for the acquisition of Palmer as sale-price evidence, the school board sought to shift the burden to Palmer to rebut the propriety of relying on that price as reflecting the value of the real

estate. The BTA agreed with the school board's position and applied the presumption.

{¶ 31} Palmer advances three interrelated reasons why the contract price should not trigger the presumption that it reflects the value of the real estate. We reject all three contentions for the reasons that follow.

### 1. *Previous decisions of this court are factually distinguishable*

{¶ 32} Palmer contends that two decisions of this court bar the application of the sale-price presumption because the transfer was consummated through the sale of the L.L.C. rather than as a sale of the property itself. *See Salem Med. Arts & Dev. Corp. v. Columbiana Cty. Bd. of Revision,* 82 Ohio St.3d 193, 694 N.E.2d 1324 (1998); *Gahanna-Jefferson Pub. Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 89 Ohio St.3d 450, 732 N.E.2d 978 (2000). In both *Salem Med. Arts* and *Gahanna-Jefferson*, as in this case, the BTA grappled with whether evidence of the sale of an entity should be deemed to be functionally equivalent to a sale of the real estate owned by the entity, given that the real estate was the principal or only asset the entity owned.

{¶ 33} In *Salem Med. Arts*, an existing shareholder of a corporate entity acquired the shares of the remaining shareholders in a series of transactions. BTA No. 95-S-839, 1997 Ohio Tax LEXIS 600, *10-11, 15 (May 9, 1997). The BTA found multiple reasons why the sale price did not equate to real-estate value in that case, including that the sale could not reasonably be viewed as an arm's-length transaction because it was not fully voluntary, did not involve an open-market negotiation, and may have occurred subject to a sale-leaseback arrangement. *Id*. at *15.

{¶ 34} *Gahanna-Jefferson* involved two separate BTA decisions on appeal. *Gahanna-Jefferson Pub. Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, BTA No. 97-A-336, 1999 WL 565493 (July 23, 1999); *Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, BTA No. 97-A-337, 1999 WL 565564 (July 23,

1999). Each decision addressed the acquisition of partnership shares, and in each case, the BTA found not only that the presumption favoring the use of a sale price was rebutted by the showing of a fee-exempt conveyance but also that the entity-sale evidence either did not sufficiently establish contract terms (*Gahanna-Jefferson*) or did not establish an arm's-length transaction (*Dublin*).

{¶ 35} Our decision in *Salem Med. Arts* explained that a corporate entity's going-concern value is distinct from the value of its real-estate assets. In *Gahanna-Jefferson*, our decision focused on the fact that the sale of the partnership interest in that case was a sale of personal property and that there was no evidence of a separate sale of real property. In each decision, we articulated a broad principle as a basis for affirming the BTA's rejection of the use of the contract prices as the true value for the real estate.

{¶ 36} Palmer reads our decisions in *Salem Med. Arts* and *Gahanna-Jefferson* as articulating an iron rule that the sale of an entity may never, for purposes of invoking the sale-price presumption, be viewed as equivalent to a sale of the entity's real-estate asset. We disagree. Considering the context of those decisions—the BTA had refused to apply the presumption and we affirmed the BTA's decision—we conclude that they do not require us to reverse the BTA's decision in this case.

{¶ 37} Although there are numerous points of factual distinction between the two prior cases and the instant case, one fact stands out as having overriding significance. In *Salem Med. Arts* and *Gahanna-Jefferson*, the purchase contracts provided for sales of corporate shares or partnership interests without explicit reference to an intent to sell and buy the real estate itself. *See Salem Med. Arts*, BTA No. 95-S-839, 1997 Ohio Tax LEXIS 600, *10-11 (reciting the series of transfers of corporate shares among shareholders that culminated in the taxpayer's sole ownership of the entity that owned the medical building whose value was at issue), *aff'd* 82 Ohio St.3d 193, 694 N.E.2d 1324; *Gahanna-Jefferson*, BTA No.

97-A-336, 1999 WL 565493, at *2 (board of education introduced and relied on "partnership interests purchase agreement" obtained in discovery), *aff'd* 89 Ohio St.3d 450, 732 N.E.2d 978; *Dublin City Schools*, BTA No. 97-A-337, 1999 WL 565564, at *2 (board of education introduced and relied on "partnership interests purchase agreement" obtained in discovery), *aff'd Gahanna-Jefferson*, 89 Ohio St.3d 450, 732 N.E.2d 978.

{¶ 38} In stark contrast, the BTA in this case confronted a document labeled by the parties as "Sale of Palmer House on the Boulevard 4121 Palmer Park Circle East New Albany, Ohio" and "Purchase and Sale Agreement." That is, the contract identifies itself as a purchase agreement for the real estate at issue. Beyond its cover page, the contract takes the classic form of a purchase agreement for commercial real estate by identifying as the subject matter of the transaction the specific real property along with categories of personal property appurtenant to the commercial operation of the real estate. Finally, this particular contract includes an explicit provision setting forth an optional method for consummating the deal as a transfer of corporate ownership rather than a conveyance of real estate from the seller to the buyer.

{¶ 39} We conclude that the documentation in this case made it reasonable for the BTA to find that this sale, unlike those in the earlier cases, reflected the parties' intent to sell and purchase income-producing real estate and supported the BTA's finding that the parties' transfer of corporate ownership constituted a contrivance for accomplishing the sale of commercial real estate.

2. *A sale of income-producing real estate does not change its nature merely because appurtenant personal property is sold along with the realty*

{¶ 40} Under both its first and fifth propositions of law, Palmer argues that the contract price the BTA used to value the property does not indicate real-estate value, because the sale of the L.L.C. involved assets—real, personal, and intangible property—along with what counsel at oral argument referred to as "considerations"

apart from the transfer of the real estate itself. And indeed, the purchase agreement does set forth a list of items transferred as part of the sale. Other "considerations" include contingencies of the sale, such as the assumption of loan obligations in relation to the mortgage on the property, and the sale of another piece of commercial real estate, plus an agreement relating to potential liability from a pending Americans with Disabilities Act lawsuit.

{¶ 41} Palmer argues that the presence of these other assets and considerations means that the transaction involved the transfer of an ongoing business with multiple assets, not just real estate. In support, Palmer cites cases in which real-estate value is intertwined with business value—a situation we have addressed mainly in cases involving the tax valuation of the real property used in the operation of nursing homes and other congregate-care facilities. *See, e.g.*, *HCP EMOH, L.L.C. v. Washington Cty. Bd. of Revision*, 155 Ohio St.3d 378, 2018-Ohio-4750, 121 N.E.3d 370, ¶ 14; *Arbors E. RE, L.L.C. v. Franklin Cty. Bd. of Revision*, 153 Ohio St.3d 41, 2018-Ohio-1611, 100 N.E.3d 379, ¶ 19.

{¶ 42} We reject this argument. On the record before us, the real estate at issue generates rent income, which is integral to the value of the real estate. No other income is derived from the use of the property that would relate to any business value other than the value of the real estate itself. *See St. Bernard Self-Storage, L.L.C. v. Hamilton Cty. Bd. of Revision*, 115 Ohio St.3d 365, 2007-Ohio-5249, 875 N.E.2d 85, ¶ 24-26 (affirming rejection of partial allocation of self-storage facility's sale price to "goodwill" because the business income was generated by rent, which was part of the value of the real property); *Hilliard City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 128 Ohio St.3d 565, 2011-Ohio-2258, 949 N.E.2d 1, ¶ 33. That fact places this case in the category of those sales of income-producing properties in which the total contract price constitutes a presumptive starting point for valuing the real estate, subject to reduction if the

owner demonstrates the propriety of allocating some of the contract price to assets other than real property. *See, e.g.*, *St. Bernard Self-Storage* at ¶ 13, 16-17, 19.

3. *The purchase agreement in conjunction with the deed and the settlement statement evidences the fact of sale and the amount of consideration*

{¶ 43} Palmer's second proposition of law states that the BTA applied the wrong burden of proof, and in addition to its evidentiary objections, Palmer argues that "[t]he Board of Education failed to establish there was a 'sale' of real estate" because the only conveyance-fee form in evidence sought an exemption for a transfer without consideration. By structuring the transaction as a transfer of ownership of an L.L.C. rather than as a conveyance of real estate, the parties incurred no obligation to pay a conveyance fee or file a conveyance-fee statement in connection with the transfer. R.C. 319.54(G)(3)(m); *see* R.C. 319.202.

{¶ 44} As a result, there is no conveyance-fee statement reporting an amount paid for real estate here. That document has been important in other cases involving the sale price of real estate as we have often justified applying the sale-price presumption to the amount the property owner reported on the conveyance-fee statement. *See Hilliard City Schools*, 128 Ohio St.3d 565, 2011-Ohio-2258, 949 N.E.2d 1, at ¶ 18; *Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 6, 12, 46. But these cases do not support Palmer's position. In both cases, the full contract price was reported as consideration for the real estate on the conveyance-fee statement and both the purchase agreement and conveyance-fee statement pointed to the same presumptive value. *See Hilliard City Schools* at ¶ 12, 18; *Cummins* at ¶ 6. In other cases in which an allocated amount extracted from the entire contract price has been reported on the conveyance-fee statement as the amount paid for the real estate, we have recognized the full contract sale price (minus allocations for personal property that were sufficiently supported or uncontested) as the presumptive value of the property rather than accepting the allocated sale price as reported on the statement.

*See St. Bernard Self-Storage*, 115 Ohio St.3d 365, 2007-Ohio-5249, 875 N.E.2d 85, at ¶ 4, 13; *see also Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 151 Ohio St.3d 109, 2017-Ohio-7650, 86 N.E.3d 308, ¶ 2-3, 11.

{¶ 45} *St. Bernard Self Storage* and *Cincinnati School Dist.* hold an important logical implication for the present situation: that a purchase agreement may constitute both evidence of the sale and of the amount of consideration paid for the real estate. In this case, the evidence includes a purchase agreement that specifically provides for an entity transfer and a deed and settlement statement that are related to that purchase agreement. We conclude that the absence of an officially reported sale price on a conveyance-fee statement is immaterial on this record. The BTA had an adequate evidentiary basis for applying the sale-price presumption to the consideration set forth in the purchase agreement and corroborated by the settlement statement.

### C. Weiler's appraisal was not the only evidence of value

{¶ 46} Palmer's fourth proposition of law posits that the Weiler appraisal was the "only probative and competent evidence of value." Although the BTA rightly acknowledged the admissibility of the appraisal, the board disregarded its overall opinion of value, $25,000,000, after accepting the sale price as a prima facie indication of value.

{¶ 47} The BTA was justified in not regarding Weiler's appraisal as a rebuttal of the sale price as best evidence inasmuch as Weiler did not even review any documentation regarding the 2015 sale of the property that was effectuated through the transfer of ownership of Palmer House Borrower, L.L.C. Because Weiler did not account for the fact that the entity transfer involved a transfer of the real estate for consideration, he failed to explain why that datum should be accorded no weight in valuing the property. This permitted the BTA to regard Weiler's appraisal as failing to refute the $35,250,000 sale price as the value of the property. *See Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 146 Ohio

St.3d 470, 2016-Ohio-757, 58 N.E.3d 1126, ¶ 29-30 (reliance on appraisal affirmed when appraiser explained why he did not rely on the sale price), *superseded by statute on other grounds*, as stated in *Westerville City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 154 Ohio St.3d 308, 2018-Ohio-3855, 114 N.E.3d 162, ¶ 13.

{¶ 48} Additionally, we decline to consider Palmer's objections to the BTA's consideration of Bilger's appraisal—the appraisal that was introduced by the school board. Palmer acknowledged at oral argument that Bilger's appraisal was "totally ignored" by the BTA in determining value.

### D. Palmer has not shown a constitutional violation

{¶ 49} Under its fifth proposition of law, Palmer contends that the BTA's decision violates Article XII, Section 2 of the Ohio Constitution, which requires that "[l]and and improvements thereon shall be taxed by uniform rule according to value * * *." Palmer argues that the BTA's decision permits the taxation of personal property along with real property. Here, however, the BTA deducted an amount from the sale price relating to personal property based upon Palmer's appraisal evidence, and under the case law, the BTA was justified in presuming that the rest constituted real-estate value. Invoking the Ohio Constitution in this context constitutes "nothing more than pinning a constitutional label on the contentions that we have already rejected." *Hilliard City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 154 Ohio St.3d 268, 2018-Ohio-4282, 113 N.E.3d 533, ¶ 16.

### IV. CONCLUSION

{¶ 50} For the foregoing reasons, we affirm the decision of the BTA.

Decision affirmed.

O'CONNOR, C.J., and KENNEDY, FRENCH, DEWINE, and STEWART, JJ., concur.

FISCHER, J., concurs in judgment only.

_____

Vorys, Sater, Seymour & Pease, L.L.P., Nicholas M.J. Ray, Lauren M. Johnson, and Mitchell A. Tobias, for appellant.

Rich & Gillis Law Group, L.L.C., Mark H. Gillis, and Kelley A. Gorry, for appellee Columbus City Schools Board of Education.

_____